585 A.2d 1166

**GEORGIA–PACIFIC CORPORATION, Appellant,**

v.

**CITY OF READING COMMISSION ON HUMAN RELATIONS and David Graham, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Jan. 23, 1991.

Edward H. Feege, Duane, Morris & Heckscher, and Victor M. Pascutoi, Lehigh Valley, for appellant.

Carol A. Genduso, Sol., Reading, for appellee, City of Reading Commission on Human Relations.

G. Thompson Bell, III, Stevens & Lee, Reading, for appellee, David Graham.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Georgia–Pacific Corporation (GP) appeals a decision of the Court of Common Pleas of Berks County, which affirmed the City of Reading Commission on Human Relations' (Commission) determination that GP had violated Section 7(a) of the Reading Human Relations Ordinance [1] when it terminated one of its employees, David Graham (Graham).

Graham, a black male, was employed by GP from October, 1984 until he was laid off in August, 1985. Although Graham was recalled to work at GP effective July 7, 1986, he also continued his then current employment at the Limerick Power Plant (Limerick), often trading shifts with other GP employees to accommodate his work schedule at Limerick.

On July 21, 1986, Graham did not report to work at GP because of a problem he was having with his contact lenses.

1. Bill No. 4, enacted February 14, 1968, *as amended.*

Graham submitted a note from his eye doctor to his supervisor indicating that he was unable to return to work until July 30, 1986. The personnel director called the doctor's office, was informed that Graham needed new lenses but could work if he had glasses, and advised Graham accordingly. Graham insisted he had no glasses and, therefore, could not report to work unless he was given lighter duties. Graham was informed that he must report for full duty work on July 25, 1986, or he would be regarded as a voluntary quit. Graham did not report to work on July 25, 1986. When he returned the following week, Graham was informed that he was no longer an employee of GP.

In September, 1986, Graham filed a grievance and, pursuant to the arbitrator's award, was reinstated in June, 1987, without an award of back pay. Although Graham had not raised any charges of racial discrimination before the arbitrator, he did so later before the Reading–Berks Human Relations Council (Council), a private corporation which acts as a private civil rights advocacy organization. The Council investigated, prepared a complaint alleging unlawful dismissal because of race and presented the matter to the Commission. GP filed a Motion to Dismiss, raising among other things due process concerns, which was denied. Initially, no probable cause was found; however, upon further investigation the Commission reversed itself. Two public hearings were held in April and in November, 1988, and by decision dated February 27, 1989, the Commission found in Graham's favor and ordered GP to pay back pay in the amount of $24,338.75.

GP filed a petition for review with the trial court challenging the Commission's finding that Graham had established a prima facie case and asserting that the Council's and Commission's interrelationship violated GP's due process rights. Graham intervened and also filed a petition for review requesting prejudgment interest on the award of back pay. The trial court, in an interim opinion dated December 1, 1989, which was reaffirmed and made final by opinion dated July 18, 1990, dismissed GP's petition for

review concluding there was substantial evidence to support a finding of discrimination and modified the Commission's decision to award Graham prejudgment interest. On the due process issue, the trial court concluded that GP failed to show actual prejudice as a result of the alleged interrelationship and, therefore, that it was not deprived of due process. This appeal followed.[2]

GP raises two issues for our review: 1) whether GP was denied due process because the Commission and the Council commingled prosecutorial and adjudicative functions; and 2) whether the decision of the Commission, affirmed by the trial court, was supported by substantial evidence. We conclude that GP was denied due process, and we will address only that issue.

GP argues that there is a "symbiotic" relationship between the Commission and the Council, and that as a result, the Commission and the Council are, in practice, one agency that both prosecutes and adjudicates discrimination complaints. GP further argues that particular individuals working for both the Commission and the Council functioned in a manner that created actual bias against GP, thereby denying it due process.

In addition, when Graham challenged the Commission's initial finding of no probable cause by presenting additional information in the form of testimony from the union representative at a regularly scheduled Commission meeting, no representative from GP was present. This ex parte hearing resulted in the finding of probable cause.

Testimony of record reveals that the Commission and the Council share offices at the same address, that Joan Reppert (Reppert) serves as executive director of both the Commission and the Council and that Reppert makes recommendations to the Mayor's office of persons for

2. Our scope of review is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether the findings of fact are supported by substantial evidence. *Johnstown Redevelopment Authority v. Pennsylvania Human Relations Commission,* 124 Pa.Commonwealth Ct. 344, 556 A.2d 479, *petition for allowance of appeal granted,* 522 Pa. 626, 564 A.2d 917 (1989).

appointment to the Commission. Reppert testified that she couldn't think of any instance where her recommendations had not been accepted. She testified further that the Commission and the Council share staff members, i.e., herself, the Council's staff assistant and its investigator; that a bank account is maintained in the Council's name for the benefit of both the Commission and the Council; and that the attorney representing Graham, G. Thompson Bell, III (Bell), is a Council board member and periodically advises the Council.

██ By letter dated March 1, 1988, Bell informed Reppert that he was representing Graham and was recusing himself from Council business in this matter. However, his recusal did not occur until almost one year subsequent to the findings of probable cause. The record also reveals that Commissioner Hazel Black (Black), who presided over the adjudication, reviewed the Council's investigative files prior to the probable cause determination. GP argues that her review constituted misconduct and violated GP's due process rights.[3]

██ The basic due process requirement that there be a fair trial before an impartial tribunal is applicable to administrative tribunals as well as to courts. *Montgomery Township v. Bureau of Social Security for Public Employees,* 68 Pa.Commonwealth Ct. 525, 449 A.2d 841 (1982). Potential dangers exist when there is a commingling of the investigative, prosecutorial and adjudicative functions. We have recognized that the due process requirement of a fair trial is violated when these functions are commingled in a single individual and that due process may be violated when these functions are performed by different individuals with-

3. The Commission, at oral argument before this Court on this matter, raised the issue of whether GP had properly preserved certain of its specific factual allegations relative to its due process argument. The Commission contends that because GP did not include the specific factual allegations in its brief of the Commissioner's ex parte probable cause hearing and of Commissioner Hazel Black's review of Council's investigative file on Graham, it has waived appellate review of those issues. Our review of the entire record reveals that these allegations were preserved below and are properly before us for appellate review.

in the same administrative entity. *Board of Pensions and Retirement v. Schwartz*, 97 Pa.Commonwealth Ct. 539, 510 A.2d 835 (1986), *petition for allowance of appeal granted*, 513 Pa. 637, 520 A.2d 1387 (1987). The test in the latter situation is whether the functions performed are adequately separate so that there is no *actual* prejudice. *Id.*

■ To ascertain bias when the prosecutorial and adjudicative functions are performed by different individuals within the same administrative agency, we examine two factors: first, does anything of record indicate improper commingling of the functions performed by the involved individuals; and second, has one such individual concerned himself with the other's activities. *Id.*

■ In the present case, there are both allegations and evidence of record of cooperation between the Council, an advocacy group whose role is prosecutorial in nature, and the Commission, a quasi-judicial body. Black, in her role as adjudicator, was privy to the Council's investigative files. Such an exchange of information denotes improper commingling of functions sufficient to work a denial of due process.

This Court has stated that "[w]here there is an identity or a meaningful relationship between legal counsel prosecuting a case on behalf of a public party and a member of the decision-making body, or legal adviser to that body, the commingling of functions constitutes a deprivation of due process." *FR & S, Inc. v. Department of Environmental Resources*, 113 Pa.Commonwealth Ct. 576, 591, 537 A.2d 957, 964 (1988), *aff'd per curiam*, 522 Pa. 114, 560 A.2d 128 (1989). The test here is whether the relationship is one in which influence is likely. *Id.* Reppert's position as Executive Director of the Council and the Commission creates a situation that is likely to foster such influence and violate due process. Likewise, Bell's advisory position with the Council and subsequent position as Graham's attorney creates similar concerns. More importantly, Black's access to and review of the Council's investigative files clearly imped-

ed her impartiality as an adjudicator. For this reason, we conclude that the test of actual bias has been met. *Schwartz.*

■ The law recognizes a due process violation for the commingling of adjudicative and prosecutorial functions, and we held in *Schwartz* that advisory roles, such as those illustrated here, are effectively adjudicative in nature.

> The role of the prosecutor is to fashion as strong a case against the accused as the evidence will allow. This is manifestly at odds with the impartiality required of the adjudicator. When the prosecutor as an individual is permitted in some manner to fulfill the role of the fact-finder one of the necessary elements of a fair trial is lacking.

*Bruteyn Appeal,* 32 Pa.Commonwealth Ct. 541, 549, 380 A.2d 497, 501 (1977). Since the fact-finding function is critical to resolution of administrative cases, and is only subject to limited appellate review, it is imperative that the process "be afforded the broadest dimensions of constitutional protection." *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong,* 25 Pa.Commonwealth Ct. 295, 302, 361 A.2d 497, 501 (1976). We note that there are numerous factual disputes in this matter and, therefore, that constitutional protections during the fact-finding process are of even greater significance. *See Horsley v. Philadelphia Board of Pensions,* 97 Pa.Commonwealth Ct. 558, 510 A.2d 841 (1986).

■ In conclusion, the Commission's decision-making process was tainted with bias, thereby denying GP due process. Accordingly, the decision of the trial court is vacated and this matter is remanded to the trial court for further remand to the Commission. The Commission is directed to hold a fair and unbiased hearing within a reasonable time in accordance with this opinion. Specifically, the Commission shall use only that evidence which it obtains through the hearing process and not any information obtained on an ex parte basis from the Council or its investigators. Furthermore, any commissioners who hear this matter on remand

may not be privy to information heretofore obtained in such a manner. Accordingly, because of her improper review of Council's investigative files, Commissioner Black may not sit as a Board member on this matter. Finally, the Commission is admonished to be mindful of the fact that it must take appropriate steps at the remand hearing to see that there is no improper commingling of the investigative, prosecutorial and adjudicative functions.

## ORDER

AND NOW, this 23rd day of January, 1991, the order of the Court of Common Pleas of Berks County in the above-captioned matter is vacated. This matter is remanded to the trial court to be remanded to the City of Reading's Commission on Human Relations. The Commission is directed to hold a new hearing within a reasonable time in accordance with the specific directions in the foregoing opinion.

Jurisdiction relinquished.