STONE AND EDWARDS INSURANCE AGENCY, INC., Emerson D. Lightner and Gary W. Lightner, Petitioners,

v.

DEPARTMENT OF INSURANCE, Cynthia M. Maleski, Acting Insurance Commissioner, Thomas S. Buzby, Deputy Insurance Commissioner, Laura C. Plumley, Presiding Officer, Respondents.

STONE & EDWARDS INSURANCE AGENCY, INC., Emerson D. Lightner and Gary W. Lightner, Petitioners,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF INSURANCE, Cynthia M. Maleski, Acting Insurance Commissioner, Thomas S. Buzby, Deputy Insurance Commissioner, Laura C. Plumley, Presiding Officer, and Steven J. Harman, Chief, Division of Agents & Brokers, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1993.

Decided Jan. 3, 1994.

James W. Evans, for petitioners.

Gregory E. Dunlap, Executive Deputy General Council and Scott M. Schwartz, Dept. Counsel, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, PELLEGRINI and FRIEDMAN, JJ.

PELLEGRINI, Judge.

Before this court are cross-motions for summary judgment questioning whether the Unfair Insurance Practices Act (UIPA) [1] is unconstitutional because it permits commingling of prosecutorial and adjudicative functions in the office of Insurance Commissioner (Commissioner), and whether the Insurance Department's (Department) placing of administrative "holds" on an agent's applications is improper.

I.

Stone & Edwards Insurance Agency, Inc. (Stone & Edwards) is a licensed corporation authorized to sell insurance [2] within the Commonwealth. Both Emerson Lightner and Gary Lightner (collectively, with Stone & Edwards, Petitioners) are licensed agents affiliated with Stone & Edwards.[3]

In February, 1988, the Department began investigating allegations of insurance law violations made against the Petitioners. As a result of the investigation, the Department determined $107,000 in premiums collected by Stone & Edwards to be unlawful, and in the summer of 1990, demanded that restitution be made. Stone & Edwards denied any impropriety and refused.

The Department, through the Deputy Insurance Commissioner for Consumer Service Enforcement and Program Services (Deputy Commissioner–Enforcement), commenced an enforcement action, P–91–10–35 (enforcement proceeding), seeking to have the existing licenses of Gary and Emerson Lightner revoked. The Lightners answered and requested a hearing. The Office of Hearing Appeals then appointed a hearing officer to take testimony and make a recommendation to the Commissioner pursuant to 31 Pa.Code § 56.1 and 1 Pa.Code §§ 35.123, 35.187.

While their investigation into Petitioners' business practices was ongoing but before the enforcement proceeding was instituted by the Department, two insurance companies, Colony Life Insurance Company (Colony) and Aetna Life Insurance & Annuity Company (Aetna) applied to have Emerson

1. Act of July 22, 1974, P.L. 589, No. 205, *as amended,* 40 P.S. §§ 1171.7–1171.11.

2. Stone & Edwards brokers in life, accident, health, property and casualty insurance, as well as certain annuity investments.

3. Emerson Lightner, while having retired as an officer of Stone & Edwards, still brokers policies through the firm. Gary Lightner writes policies for several insurance companies through Stone & Edwards and remains an active officer in the corporation.

Lightner licensed as their agent.[4] The Department advised both Aetna and Colony that no new licenses would be issued for Emerson Lightner until the investigation of Stone & Edwards was resolved. No notice, however, of the "holds" on license applications was given to Emerson Lightner.

The day after the Department commenced the enforcement proceeding, it lifted the "hold" and denied the Colony and Aetna applications to have Emerson Lightner appointed their agent. The reason for this denial was that the Department considered Emerson Lightner to be "unworthy" for additional licenses based upon the underlying facts of the enforcement proceeding. Emerson Lightner appealed the denial (P92–03–06 (license appeal)). Because the issues in the two proceedings were similar, the Insurance Commissioner appointed the same hearing officer to hear the license appeal and the proceedings were consolidated for hearing. On October 16, 1992, the Department placed "holds" on any new license applications by either Gary or Emerson Lightner and Stone & Edwards pending disposition of the enforcement proceeding.[5]

Before any hearings were held on the enforcement proceeding and license appeal, Petitioners filed two petitions for review. The first was a complaint for declaratory judgment and request for injunctive relief (No. 216 M.D.1992) seeking to have Section 506 of the Administrative Code of 1929[6] and Section 102(a) of the Administrative Agency Law[7] declared unconstitutional because facially, those provisions permit an impermissible commingling of prosecutorial and adjudicative functions within the Insurance Department.[8] The second petition (No. 317 M.D. 1992) sought to have Sections 7, 8 and 9 of UIPA declared unconstitutional also for impermissible commingling, as well as seeking a mandamus to have the Department issue the "held" licenses.[9]

Following the Department's answers and the close of the pleadings, both parties filed motions for summary judgment,[10] agreeing that the disposition of this matter turns

4. Even though licensed to represent other companies, every time one wishes to receive a license to represent a new insurance carrier, a new license must be obtained from the Commissioner. Section 603 of the Insurance Department Act (Act), Act of May 17, 1921, P.L. No. 789, *as amended,* 40 P.S. § 233.

5. While Gary Lightner had no license applications pending when the hold was instituted by the Department, an application to have Stone & Edwards appointed its agent had been submitted by Sun Life Insurance Company.

6. Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 186.

7. 2 Pa.C.S. § 102(a). Petitioners also contended that the regulations promulgated under these statutes, 1 Pa.Code §§ 35.14, .121, .185, .187, .190 and .226; 4 Pa.Code § 9.1; 31 Pa.Code §§ 33.7, .18, .21 and 56.2, enabled the impermissible commingling.

8. Petitioners' request for injunctive relief in the No. 216 M.D.1992 action was denied by Senior Judge Silvestri on July 9, 1992. However, the same day, in *Robert C. Griffin v. Pennsylvania Insurance Department,* Senior Judge Silvestri issued a preliminary injunction against the Department staying enforcement proceedings under a commingling challenge to portions of the UIPA. Based upon this injunction, Plumley stayed proceedings in both the P91 and P92 actions.

9. Hearings were held before Judge Friedman on Petitioners' request for injunctive relief. Judge Friedman issued a *decree nisi* enjoining the Department in P92 (licensing action) on the basis that the provisions of the UIPA under which the proceeding was commenced permitted an unconstitutional commingling of functions under the Supreme Court's decision in *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). Following post-trial exceptions, Judge Friedman filed a modified *decree nisi,* preliminarily prohibiting the Department from holding Petitioners' new license applications or denying such applications on the basis of unworthiness, ordering the Department to grant the license applications of Aetna and Colony, and temporarily enjoining proceedings in both the P92 and P91 actions. Judge Friedman then ordered No. 216 M.D.1992 and No. 317 M.D.1992 consolidated for the filing of dispositive summary judgment motions presently before us.

10. While the Petitioners' motion for summary judgment and the Department's counter-motion deal with both actions, Petitioners have not addressed in their brief the contentions raised in No. 213 M.D.1992, which, accordingly, are waived. *Commonwealth by Zimmerman v. National Apartment Leasing Co.,* 108 Pa.Commonwealth Ct. 300, 529 A.2d 1157 (1987).

strictly on questions of law.[11] The cross-motion presents two general issues: 1) whether a statute which on its face vests both prosecutorial and adjudicative functions is unconstitutional because it purportedly permits impermissible commingling; and 2) whether the Department's holding of Petitioners' license applications pending the outcome of the enforcement action against Petitioners is unlawful.

II.

Article I, Sections 1, 9 and 11 of the Pennsylvania Constitution[12] give to the people of Pennsylvania the right to due process guaranteeing those appearing in any judicial or administrative tribunal the right to a fair and impartial hearing. While the rights protected under those Articles and the rights guaranteed under the Fourteenth Amendment are substantially coextensive, the Pennsylvania due process rights are more expansive in that, unlike under the Fourteenth Amendment, a violation of due process occurs, even if no prejudice is shown, when the same entity or individual participates in both the prosecutorial and adjudicatory aspects of a proceeding. Compare *Lyness v. State Board of Medical Examiners,* 529 Pa. 535, 605 A.2d 1204 (1992) with *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Petitioners contend that their right to a fair hearing under the Pennsylvania Constitution is being denied because of the appearance of impermissible commingling by the purported vesting by UIPA of prosecutorial and adjudicatory functions to investigate unlawful insurance practices in the Insurance Commissioner.

Impermissible commingling exists within an administrative agency when the prosecutorial and administrative functions are not adequately separated. *Lyness, supra; Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975). Due process rights not only can be violated when there is actual commingling, but even when an appearance that commingling of functions may have taken place within the agency exists. As our Supreme Court stated in *Lyness:*

> Whether or not actual bias existed as a result of the board acting as both prosecutor and judge is inconsequential; the potential bias and the appearance of non-objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution.

*Id.* 529 Pa. at 548, 605 A.2d at 1210 (citations omitted). *See also Copeland v. Township of Newtown,* 147 Pa.Commonwealth Ct. 463, 608 A.2d 601 (1992). However, a single administrative agency may exercise both prosecutorial and adjudicative functions if "walls of division" are constructed within an agency that clearly separates those two functions. *Lyness* 529 Pa. at 546, 605 A.2d at 1209.[13]

11. Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, along with testimony, demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035. *McNeal v. City of Easton,* 143 Pa.Commonwealth Ct. 151, 598 A.2d 638 (1991).

12. Article I of the Pennsylvania Constitution provides in relevant part:

> § 1. All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
>
> ....
>
> § 9. In all criminal prosecutions the accused hath a right to ... a speedy public trial by an impartial jury of the vicinage; he cannot be ... deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.
>
> ....
>
> § 11. All courts shall be open; and every man for an injury done to him in his lands, goods, person or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial or delay....

13. We recently applied the Supreme Court's "walls of division" principle in *Cooper v. State Board of Medicine,* 154 Pa.Commonwealth Ct. 234, 623 A.2d 433 (1993). *Cooper* involved a post-*Lyness* challenge to disciplinary proceedings before the State Board of Medicine. Following *Lyness,* the Board adopted emergency interim regulations which prohibit Board members who participate in the decision to prosecute from participating in the adjudication of the merits of the case. In response to Cooper's contention that *Lyness* requires an entity distinct from the Board initiate prosecutions, we stated:

> In fact, the *Lyness* court implicitly concluded that sub-entities of administrative agencies

The "walls of division" necessary to prevent commingling appears to have been breached by Sections 7,[14] 8[15] and 9[16] of UIPA[17] by authorizing the Insurance Commissioner to both prosecute (allowing her to examine and investigate insurance agents and initiate proceedings against those agents for alleged violations of UIPA), and then adjudicate by holding hearings on the charges, determining the charged individual's liability and administering the remedial action. However, it must be remembered that UIPA is no different than most regulatory statutes that provide that a single entity, a board or a person, has the power to investigate, prosecute and adjudicate violations of the statutes they are charged to enforce.

Like most statutes that appear to facially allow commingling[18], UIPA has been implemented by the Department so that there is no commingling of prosecutorial and adjudicatory functions. Especially since *Lyness,* regulatory agencies have established "walls of division" between those performing prosecutorial and those performing adjudicatory functions. In implementing UIPA, the Commissioner has delegated all prosecutorial functions to the Deputy Commisioner—Enforcement, who is ultimately responsible for the initiation of UIPA prosecutions.[19] In deciding whether to initiate an enforcement action under UIPA, the Deputy Commissioner has no interaction with the office of the Commissioner nor with the Office of Administrative Hearings, the Commissioner's adjudicative arm.[20] Department procedures dic-

could perform the prosecutorial and adjudicative without commingling those functions, as long as walls of division are constructed to eliminate the threat or appearance of bias. (citations omitted).

Thus, the separate entity that the court envisioned could consist of members of the Board itself, as long as none of those members had participated in the prosecution stage of the proceeding.

*Id.* at 237, 623 A.2d at 435.

**14.** § 7 Power of Commissioner.

The *Commissioner* may examine and investigate the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this act.

40 P.S. § 1171.7.

**15.** § 8 Administrative Hearing.

(a) If, as a result of investigation, *the Commissioner has good cause to believe* that any person is violating any provision of this act, *the Commissioner shall send notice of the violation* by certified mail to the person believed to be in violation. The notice shall state the time and place for the hearing which shall not be less than thirty days from the date of such notice.

....

(e) Following the hearing, *the Commissioner shall issue a written order resolving the factual issues presented at the hearing and stating what remedial action, if any, is required of the person charged.* The Commissioner shall send a copy of the order to those persons participating in the hearing.

40 P.S. § 1171.8.

**16.** § 9 Administrative Penalty.

Upon a determination by hearing that this act has been violated, *the Commissioner may issue an order requiring the person to cease and desist from engaging in such violation or if such violation is a method of competition, act or practice defined in Section 5 of this Act, the Commissioner may suspend or revoke the person's license.*

40 P.S. § 1171.9.

**17.** 31 Pa.Code § 56.2 implements these provisions:

(a) At the conclusion of an administrative hearing, ... *the matter will be adjudicated by the Commissioner....*

**18.** See, General Dental Law, 63 P.S. §§ 122(h), (j).; Pharmacy Act, 63 P.S. §§ 390–5, 390–6; Veterinary Medicine Practice Act, 63 P.S. §§ 485.5, 485.25.

**19.** Answer and new matter of the Insurance Department, Paragraphs 61–64. Answer and new matter of Thomas S. Buzby (Deputy Insurance Commissioner), Paragraphs 15–16. The Commissioner is authorized to delegate all of her prosecutorial functions to the Deputy Commissioner—Enforcement pursuant to Section 213 of the Administrative Code, *as amended,* 71 P.S. § 73.

**20.** See N.T. July 9, 1992, at 47, 48; N.T. October 29, 1992, at 72–89.

The only contact between Deputy Commissioner Buzby's office and that of the Office of Administrative Hearings came after Deputy Commissioner Buzby issued an order to show cause in the P91 enforcement action and application was made by his department to the Office of Administrative Hearings to have a hearing officer appointed. The hearing office in this case, Laura C. Plumley, had no contact with Deputy Commissioner's Buzby's office prior to her appointment. N.T. July 9, 1992, at 34–37.

tate that the prosecutorial functions performed by the Deputy Commissioner—Enforcement remain outside the Commissioner's purview.[21] The uncontroverted evidence establishes that in practice, a wall of division between the Commissioner, the adjudicator, and that of the Deputy Commissioner—Enforcement, the prosecutor, exists with regard to prosecutions under UIPA, and there is no impermissible commingling.

Not challenging that there is indeed a "wall of division" between the adjudicatory and prosecutorial functions within the Department, Petitioners contend that it is insufficient to merely provide them with due process in practice. They contend that because UIPA facially permits an unconstitutional commingling of the prosecutorial and adjudicatory functions in the Commissioner, that alone deprives them of a right to the appearance of a fair and impartial hearing concerning the charges lodged against them. Simply, they contend that they are not only entitled to a fair and impartial hearing, but also a statute that specifically establishes a procedure that on its face guarantees a fair and impartial hearing. Because UIPA does not facially guarantee a fair and impartial hearing, they contend it is unconstitutional and the enforcement proceeding brought against them cannot be maintained. Moreover, because the enforcement action would then be dismissed, Petitioners also contend that they are entitled as a matter of law to requested additional licenses to serve as agents for additional insurance carriers.

Notwithstanding that UIPA may be implemented in a manner that would allow commingling to occur, that alone does not constitute a violation of an applicant's rights to due process. To determine whether there has been a violation of a person's right to due process, what is examined is not the process that is purportedly authorized, but instead, it is the process that the person is actually going to receive. In addressing a similar facial challenge to a statute which purportedly failed to protect the due process rights of a federal judge being disciplined, the United States Court of Appeals for the District of Columbia, in two decisions, held that it is the due process received or are going to be received rather than the due process one claims the statute provides that is examined to determine whether there was a constitutional violation. In *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093 (D.C.Cir.1985) (*Hastings I*), the court held that the District Court could not determine whether a statute on its face denied due process because the issue was not "ripe". The court held that the issue was not ripe for determination because the judge facing discipline might receive all the process he was due depending on how the statute had been implemented. *Id.* at 1101. After the hearing had been held, in *Hastings v. Judicial Conference of the United States,* 829 F.2d 91 (D.C.Cir.1987) (*Hastings II*), the court held that a facial challenge to the statute was inappropriate because it was the process that the judge received at the hearing rather than what the statute provided that determined whether due process was violated. In *Rafeedie v. Immigration and Naturalization Service,* 880 F.2d 506 (D.C.Cir.1988), the court stated that the lesson of the *Hastings* cycle is that "[if] there is a reasonable possibility that the Government will grant as much process that a reviewing court might interpret the relevant statute to require, a pre-enforcement statute challenge will be generally inappropriate." 880 F.2d at 514.

The courts of this Commonwealth, while not addressing this issue squarely, have inferentially been in accord with the principle that due process is to be determined by the hearing received and not what a statute facially purports to provide. For example, in *Lyness,* even though the Medical Practice Act of 1974 facially permitted commingling,[22]

21. See N.T. July 9, 1992, at 32–48; N.T. October 16, 1992, at 58–59; N.T. October 29, 1992, at 77–81.

22. Section 15 of the Medical Practices Act provided that:

> (a) The board shall have the authority to refuse, revoke or suspend the license of a physician....

Pursuant to regulations in force at the time, the determination of whether sufficient evidence existed to warrant a prosecution of a license revo-

the Supreme Court did not dismiss the prosecution but merely remanded the proceeding back to the Board to provide a due process hearing.[23]

In this case, there is more than a realistic chance that Petitioners will receive a due process hearing because there are the "walls of division" in place that will guarantee that there is no commingling of prosecutorial and adjudicatory functions entrusted to the Department. Nor is there a due process violation just because of the possibility that the statute may be interpreted so that there is an appearance of commingling. The "appearance of commingling" is again the appearance of the process applied, not some other procedure purportedly authorized but never given effect. Because the process that Petitioners will receive meets all the requirements of due process, their constitutional right to a fair and impartial hearing has not been violated.

III.

Petitioners contend that they are entitled as a matter of law to have their licenses to serve as agents for Colony and Aetna issued because they did not receive the predenial hearing required by 31 Pa.Code § 33.-18, which provides:

> The Department may revoke, suspend or refuse to renew the license of any agent or broker upon finding, after a hearing, that such agent or broker has engaged in conduct which would disqualify him from initial issuance of a license....

31 Pa.Code § 33.18.

Petitioners contend that because the denial of the Aetna and Colony license applications was based solely on the as yet unproven allegations in the enforcement proceeding, the regulation requires a hearing prior to the initial determination to deny the license. They contend the hearing is necessary to determine the validity of those allegations and the applicant's "worthiness" to receive additional licenses. Because no hearing was held prior to the denial, Petitioners then contend that they are entitled to have the licenses issued. The Department, however, contends that the initial decision to deny a license is not the one referred to in the regulation, but the ultimate action taken by the Commissioner that is only made after a hearing is held.

Petitioners claim to a hearing prior to the initial determination is not maintainable because it does not apply to the initial decision to deny a license application. The initial decision to deny a license application is a staff function made by the Department's Bureau of Agents and Brokers. 31 Pa.Code § 33.21. It informs the applicant of the reason the license is being denied. From this initial determination, an aggrieved applicant may appeal to the Commissioner who makes the determination for the Department as to whether to grant a license. 1 Pa.Code § 35.-20. The Commissioner, as the Department's adjudicator, is then required to hold a hearing on the applicant's worthiness to be issued additional licenses. 31 Pa.Code § 33.18. Consequently, an applicant always receives a hearing as required by the regulations before the Department decides to deny the license.[24]

Because 31 Pa.Code § 33.18 does not require a hearing before the staff determination is made to deny the licenses, Petitioners' request for an order granting summary judgment is denied. Correspondingly, the Department's request for summary judgment

cation proceeding rested with the Board. 49 Pa.Code § 16.62(c) (1987).

23. *Lyness,* 529 Pa. at 549, 605 A.2d at 1211. *See also Dussia v. Barger, supra; Bunch v. State Board of Auctioneer Examiners,* 152 Pa.Commonwealth Ct. 616, 620 A.2d 578 (1993); and *Georgia Pacific Corp. v. City of Reading Commission on Human Relations,* 137 Pa.Commonwealth Ct. 312, 585 A.2d 1166 (1991).

24. Because the Department's denial of Petitioners' license applications was not a final order, it is not an adjudication within the meaning of Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101, requiring a hearing at that level. We, therefore, find no merit in Petitioners' contention that the denial of their license applications without hearing violated Section 504 of the Administrative Agency Law. *See, e.g., Sandy Creek Forest, Inc. v. Department of Environmental Resources,* 95 Pa.Commonwealth Ct. 457, 505 A.2d 1091 (1985).

declaring that its actions were in accord with its own regulations is granted.[25]

IV.

Even if they are not entitled to have the enforcement proceeding against them dismissed because of the purported facial commingling of prosecutorial and adjudicative powers under UIPA, Petitioners contend that they are still entitled to be issued licenses to represent new insurance carriers. As existing licensees, they contend that the Department has a non-discretionary duty under the Act to issue additional licenses without making a determination as to "worthiness" and the Department's holding of their applications is improper and a violation of their due process rights. Specifically, Petitioners contend that they are entitled to a mandamus because:

- unless they have been previously found to be "unworthy" to sell insurance, the Department has a non-discretionary duty to issue licenses under Section 603 of the Act to serve as agents for additional companies once application is made.
- they are entitled to have the licenses applied for issued because the hold on their license applications without notice or hearing was an unconstitutional denial of due process.
- the decision to hold their license applications was an adjudication under the Administrative Agency Law, 2 Pa.C.S. § 101, that was invalid because they were not afforded either notice or hearing before the holds were instituted.
- once it has completed its investigation into their "worthiness", the Department cannot avoid acting on their license applications by holding them.

For Petitioners to prevail in mandamus, they must establish that issuance of a license is a ministerial act or mandatory duty on the part of the Commissioner and there is a lack of any other adequate remedy. *Equitable Gas Co. v. City of Pittsburgh*, 507 Pa. 53, 488 A.2d 270 (1985).

A.

Petitioners contend that pursuant to Section 603 of the Act,[26] the Department has a non-discretionary duty to issue licenses to existing license holders wishing to represent additional insurance companies once application is made. Section 603 provides:

> The Insurance Commissioner may issue, upon certification as aforesaid by any company ... authorized by law to transact business within this Commonwealth, an agent's license to any person of at least eighteen years of age and to any copartnership or corporation.... *When the Insurance Commissioner is satisfied that the applicant is worthy of license,* and that he is reasonably familiar with the provisions of the insurance law of this Commonwealth, he shall issue a license stating that the company ... represented by the agent has complied with the requirements of the law and has been authorized by the Insurance Commissioner to transact business within this Commonwealth ...: Provided, That any applicant who shall have held, for any period during the five years immediately preceding the application, a license to transact, as agent, any class or kind of insurance business ..., shall be entitled, upon proper application, to receive a license ... without the necessity of submitting to an examination.

40 P.S. § 233(a) (repealed 1992) (emphasis added). Contrary to Petitioners' contention, however, a plain reading of Section 603 does not require the Commissioner automatically to issue agents a license to represent addi-

25. Petitioners in this case did take an appeal from the initial Bureau decision to deny their applications to the Commissioner. This action, however, was instituted before hearings could be held in accordance with Sections 33.7 and 33.18.

26. After the events prompting this action, Section 603 was amended by Section 3 of the Act of June 11, 1992, P.L. 284, No. 48, requiring licensees to obtain licenses for each class or line of insurance the applicant wishes to engage in rather than a separate license for each individual company. As the transition from the former license scheme is dependent on a date of transition which has not yet been established, only the former provisions are applicable to Petitioners. For the purposes of our discussion, therefore, we will simply refer to the law prior to amendment as the Act.

tional companies upon application. While it excuses an agent from submitting to an exam if he or she has been licensed to represent other companies in the previous five years, Section 603, by its very terms, requires that additional licenses be issued only "when the Insurance Commissioner is satisfied that the applicant is worthy of license".[27] In construing this Section, we have held that whether an applicant is "worthy" of licensure is a discretionary determination to be made by the Commissioner. *Fumo v. Insurance Department,* 58 Pa.Commonwealth Ct. 392, 427 A.2d 1259 (1981). Because Section 603 requires a determination of "worthiness" for every license application, mandamus will not lie to compel the issuance of Petitioners' requested licenses and summary judgment on that basis is denied. Accord, *Pennsylvania Dental Association v. Commonwealth of Pennsylvania Insurance Department,* 512 Pa. 217, 516 A.2d 647 (1986).

B.

As to whether any due process rights were violated by the Department's "holding" of Petitioners' license applications without notice or hearing, Petitioners must demonstrate that they have a property right which has been impinged upon by the Commissioner.[28] Our holding that licenses to represent additional insurance companies are contingent on the Commissioner finding the applicant "worthy" means that nothing in Section 603 entitles an applicant with a property right to a license to be an agent for an additional insurance company. Without an entitlement, the license applicant has no protected property interest in a license because it does not yet exist. *See Appeal of Carlson,* 152 Pa.Commonwealth Ct. 285, 618 A.2d 1206 (1992) (applicant for position on township police force has no property interest in remaining on eligibility list); *Pittenger v. Department of State,* 142 Pa.Commonwealth Ct. 57, 596 A.2d 1227 (1991) (no property interest in application to reinstate previously revoked medical license). Because no property rights of an applicant seeking to represent additional insurance companies have been impinged, Petitioners cannot establish any due process right was violated solely because the Department "held" their license applications.

C.

Even if they do not have a property right in their license applications, Petitioners argue that they are nonetheless entitled to summary judgment because the decision to "hold" applications itself constitutes an adjudication. If the decision to hold their license applications was an adjudication, then Petitioners reason that they were entitled to a

27. One wishing to be licensed by the Commonwealth as an agent for an insurance company must first submit an application to the Department, accompanied by a certification from the insurance company that the applicant is worthy of licensure. 31 Pa.Code § 31.1. This application is then examined by the Division of Agents and Brokers for completeness. 31 Pa.Code § 33.2(a). If the application is complete and the applicant has either passed or is exempt from the requisite examination, the Division of Agents and Brokers conducts an investigation of the applicant in order to satisfy itself as to his or her worthiness for licensure. 33 Pa.Code § 33.21(e). If the Division of Agents and Brokers is satisfied as to the applicant's worthiness and all other requirements are met, it must grant the license. 33 Pa.Code § 33.21(e). Conversely, if it is not satisfied that the applicant is worthy, the Division of Agents and Brokers will deny the application. Upon the refusal of the Division of Agents and Brokers to issue a license on the basis that it is not satisfied that the applicant is worthy, the applicant may file an appeal to the Commissioner and is entitled to a hearing on the issue of his or her worthiness for licensure. 1 Pa.Code § 35.20. The Commissioner then issues a decision either granting or refusing the license on the basis of the evidence adduced at that hearing. From this determination, an aggrieved applicant may then appeal to the Commonwealth Court in its appellate capacity. 2 Pa.C.S. § 702; 42 Pa. C.S. § 763(a).

28. The threshold inquiry in any due process analysis is whether there exists any identifiable property or liberty interest at issue; for without such an interest, due process is not applicable. *Pennsylvania Interscholastic Athletic Assn. v. Greater Johnstown School Dist.,* 76 Pa.Commonwealth Ct. 65, 463 A.2d 1198 (1983). A protected property interest results from a legitimate claim to entitlement under Commonwealth law rather than a mere desire for or unilateral expectation of it. *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977). The courts of the Commonwealth have recognized that the right to earn a livelihood is a protected property interest and an existing license to transact business cannot be revoked or suspended without the requisite process. *Lyness, supra,* at 542, 605 A.2d at 1207.

hearing under the Administrative Agency Law prior to the implementation of that decision which they did not receive.[29] As a result of that reasoning, they then contend that they are therefore entitled to an order directing the Department to issue the held license applications. We disagree for several reasons.

To be entitled to notice and a hearing under the Administrative Agency Law, the governmental action at issue must constitute an adjudication. An "adjudication" as defined by the Law is:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101.

However, the action taken by the Department in withholding action on Petitioners' applications is not a final order or determination. Rather, it is itself a barrier to any final order which may issue on the subject of those applications. Because the Administrative Agency Law applies only to final decisions, the protections of Section 504 are inapplicable to the "holding" of Petitioners' license applications. *See Sandy Creek Forest, Inc. v. Commonwealth, Department of Environmental Resources,* 95 Pa.Commonwealth Ct. 457, 505 A.2d 1091 (1986).

Even if the decision were an adjudication, mandamus to compel the issuance of licenses is not the proper remedy. Just because there is a due process violation does not mean that the person whose rights were violated is entitled to a license as a remedy, only an order requiring that he or she receive the process which is due. *Roth v. Borough of Verona (Roth II),* 102 Pa.Commonwealth Ct. 550, 519 A.2d 537 (1986).

D.

Even though Petitioners were not entitled to a hearing before the Department placed a "hold" on their license applications, Petitioners are nonetheless entitled to have the holds on their pending applications lifted. Once an investigation into the "worthiness" of an applicant is completed, the Department has a non-discretionary duty to issue a decision one way or the other on the license application.

While a court cannot specify how a discretionary duty, such as issuing a license to represent additional insurance companies, is to be carried out, it can direct that discretion be exercised. *Pennsylvania Dental Association v. Commonwealth of Pennsylvania Insurance Department, supra.* As observed by the our Supreme Court:

> Mandamus is a device that is available in our system to compel a tribunal or *administrative agency to act when that tribunal or agency has been "sitting on its hands."*

*Id.* 512 Pa. at 227, 516 A.2d at 652 (emphasis added). *See Marinari v. Department of Environmental Resources,* 129 Pa.Commonwealth Ct. 569, 566 A.2d 385 (1989). *See also British Airways Bd. v. Port Authority,* 564 F.2d 1002 (2d Cir.1977); and generally, Note, *Judicial Review of Administrative Inaction,* 83 Columbia L.Rev. 627 (1983).

The Department admits that its investigation into the worthiness of Petitioners for additional licenses is complete and if it were to issue a determination on the held applications, it would deny them and open the way for Petitioners to initiate the appeal process. While we recognize that the Department has wide latitude in conducting an investigation before issuing a license and we do not question the Department's authority to refrain from taking any action on an application while that investigation is on-going, to hold these applications after the investigation is complete and a determination of unworthiness made is a *de facto* denial which the Department could make without ever having that decision challenged.[30]

29. Section 504 of the Administrative Agency Law provides:

> No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard....

2 Pa.C.S. § 504.

30. The provisions of 31 Pa.Code § 33.23(f) do not give the Department any authority to "hold"

In this case, all the elements of mandamus have been met. There is no adequate remedy for Petitioners other than mandamus because the Department's refusal to take final action on the applications precludes any appeal. The Insurance Department Act places a duty on the Department to either grant or deny applications consistent with its processing, and while the Department does have discretion in the outcome of its determination, it does not have the discretion to refuse to process Petitioners' applications. Because its investigation is complete and the Department has concluded that Petitioners are not worthy of a license, the Department has a non-discretionary duty to deny those applications and Petitioners are entitled to mandamus ordering the Department to either grant or deny all Petitioners' license applications currently being held.

V.

Based on the foregoing discussion, the Department is entitled to partial summary dismissing those counts declaring:

- Sections 7, 8 and 9 of the Unfair Insurance Practices Act to be constitutional insofar as there is not an impermissible commingling of prosecutorial and adjudicative functions within the office of Insurance Commissioner in enforcement proceedings brought under that Act.
- the initial denial of Petitioners' license applications to be lawful.
- the Department's "holding" new license applications during the pendency of its investigation did not violate due process.

However, Stone & Edwards is entitled to mandamus directing the Department to either grant or deny the application of Sun Life Insurance Company to have Stone & Edwards licensed to be its agent because the Department's investigation is complete, and it has a non-discretionary duty to process that application.

Petitioners' license applications after its investigation is complete. The Section provides:

(f) If a company's request for the termination of a license in any way reflects on the worthiness of the agent, it shall be filed in duplicate. The duplicate copy shall be sent to the agency by the Department. In the absence of valid exception taken to the information and sustained by the agent, the Department will set up a "stop" against any new licenses, either as agent or broker, but without prejudice to licenses in force at the time of such termination.

As no petition for terminate Petitioners' representation has been filed by any insurance company, the Department cannot rely on this Section to justify continuing its "hold" after its investigation into the applicants' worthiness is complete.

***ORDER***

AND NOW, this 3rd day of January, 1994, it is hereby ORDERED as follows:

1. That the Commonwealth of Pennsylvania Department of Insurance's motion for summary judgment is granted in part and denied in part. Specifically:

   a. No. 216 M.D.1992 is dismissed.

   b. Petitioners' counts challenging Sections 7, 8 and 9 of No. 317 M.D.1992 of the Unfair Insurance Practices Act are dismissed.

   c. Any claims that Petitioners' license applications should be granted are dismissed.

2. Petitioners' motion for summary judgment is denied except that the Department is directed to either grant or deny the application of Sun Life Insurance Company to have Stone & Edwards licensed as its agent within twenty (20) days of entry of this order.

FRIEDMAN, Judge, dissenting.

I respectfully dissent.

The majority identifies two general issues for review by this court: (1) whether sections 7, 8 and 9 of the UIPA, vesting both prosecutorial and adjudicative functions within the Commissioner by authorizing her to investigate and initiate proceedings against insurance agents for alleged violations of the UIPA, adjudicate those charges and administer remedial action, are unconstitutional because they allow for impermissible commingling; and (2) whether the Department can properly "hold" Petitioners' license applications on the basis of alleged "unworthiness." In deciding the first of these issues, the majority concludes that although the "walls of division" necessary to prevent comming-

ling of prosecutorial and adjudicatory functions *appear* to have been breached by sections 7, 8 and 9 of the UIPA, the Department implemented those provisions in such a way that there is no *actual* commingling. With respect to the second issue, the majority concludes that the Department has no non-discretionary duty under section 603 of the Act to issue licenses to previously licensed agents wishing to represent additional companies. Moreover, the majority holds that applicants seeking to represent additional insurance companies do not have a protected property interest in those licenses and, thus, Petitioners cannot establish a due process violation where the Department "held" their license applications. I disagree with the majority's analysis on these points.

Based on clear statutory language, Petitioners contend that the procedure set forth in sections 7, 8 and 9 of the UIPA gives rise to actual or apparent bias by permitting the commingling of prosecutorial and adjudicative functions. Contrary to the majority here, I would agree.

Because the Department's Commissioner, either alone or through delegation to subordinates, commingles the investigative, enforcement, prosecutorial and adjudicative functions in the licensing proceedings, I would hold that Petitioners' due process rights have been violated. Here, the Commissioner, through Buzby, her deputy commissioner,[1] initiated enforcement proceedings against Petitioners by requesting the legal department to issue an order to show cause and/or to suspend or revoke the existing licenses. Such delegation does not mean that the Commissioner has relinquished her ultimate responsibility for this action.[2] Furthermore, the Commissioner, through her appointed hearing officer, held hearings and adjudicated the charges initiated against Petitioners.

The Department argues that the adjudicative portion of the proceeding is significantly isolated from the prosecutorial functions by the actions of the hearing officer, Laura Plumley.[3] The Commissioner delegates a portion of her adjudicative responsibility to Plumley, who presides over departmental hearings and makes recommendations to the Commissioner. The Department asserts that because Plumley, a "neutral and detached" party, acts as hearing officer and arrives at an independent recommendation regarding the outcome of the proceedings, those proceedings have not been tainted by commingling the prosecutorial and adjudicatory functions solely within the Commissioner.

However, this argument fails to recognize that the prescribed statutory scheme clearly dictates that the Commissioner shall have final authority in all phases of the proceedings. As the language of the statutes indicates, the duties required by the statutory scheme begin and end with the Commissioner. Although Plumley may conduct the hearing, at the Commissioner's request, and may advise the Commissioner regarding the appropriate adjudication, the Commissioner retains the ultimate decision making power.[4]

1. Respondent Thomas S. Buzby (Buzby) is a Deputy Insurance Commissioner for the Commonwealth of Pennsylvania, for Consumer Services, Enforcement and Program Service and reports directly to the Commissioner. Buzby is responsible for enforcement actions against licensees and settlements.

2. The majority implies that this delegation divests the Commissioner of responsibility and, thereby, creates the requisite "wall of division." However, this is simply not the case because under the statutory scheme here, all of the delegable *actions* of the Commissioner remain her sole statutory duty.

3. Respondent Plumley is an attorney in the Insurance Department Administrative Hearings Office, appointed by the Commissioner. Plumley presides over Department Hearings involving alleged violations of the insurance laws of Pennsylvania.

4. In testimony, Plumley stated that although she does not make the final adjudication, she provides the Commissioner with a recommended decision and advice which, if not objected to by the Commissioner, becomes the Commissioner's final adjudication. Plumley testified:

> Q. What is your relationship with the Commissioner with respect to proceedings once you have held a hearing and drafted the proposed adjudication?
>
> A. It's the draft adjudication in the entirety of the docket,.... [It is] taken with a cover memo, ... and is forwarded to the Commissioner for her review. It will come back to me either signed or with notes please see me and

Inserting Plumley into the administrative procedural morass does not diminish or enhance the Commissioner's prescribed duties as both prosecutor and adjudicator.

Thus, because both prosecutorial and adjudicatory functions are commingled within a single individual, the Commissioner, the proceeding is constitutionally infirm. *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975). The Commissioner has the statutory and ultimate responsibility for all acts which the Commissioner delegates to deputies as part of their investigative or prosecutorial duties. Likewise, the Commissioner is the final adjudicator of hearings conducted by Laura Plumley. There must be a constitutional buffer between the Commissioner as prosecutor and the Commissioner as adjudicator. *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). This buffer must be in the nature of a wholly separate and independent investigative and prosecutorial entity, acting without interference from the Commissioner. As the Pennsylvania Supreme Court stated: "Such a commingling of prosecutorial and adjudicatory functions in one individual offends fundamental notions of due process and is constitutionally impermissible." *Lyness* at 545, 605 A.2d at 1209, quoting *Commonwealth, Department of Insurance v. American Bankers Insurance,* 478 Pa. 532, 534, 387 A.2d 449, 450 (1978)).

I recognize that a strong presumption exists in favor of the constitutionality of an act of the legislature and the burden lies heavily upon one challenging the act to show that it clearly, palpably and plainly violated the Constitution. *Appleton Papers, Inc. v. Commonwealth of Pennsylvania, Department of Labor and Industry,* 90 Pa.Commonwealth Ct. 399, 495 A.2d 662 (1985). However, because these statutory procedures obviously allow for the impermissible commingling of prosecutorial and adjudicatory roles in the Commissioner, the statutes themselves "clearly, palpably and plainly" violate the due process guaranty afforded by the Pennsylvania Constitution as interpreted by the Pennsylvania Supreme Court. As to its application here, I believe that the requisite "walls of division" have not been erected and so would hold sections 7, 8 and 9 of the UIPA unconstitutional as applied to Petitioners in the licensing proceeding.[5]

As to the second issue, the majority contends that section 603 of the Act does not require the Department, upon application, to issue additional licenses to existing license holders. Once again, I would disagree.

An understanding of the licensing process supports my position. Before they can sell insurance in the Commonwealth of Pennsylvania, prospective insurance agents must make application to the Commissioner. Initially, the agent is required to pass an examination to show familiarity with the insurance laws, the results of which can be retained for five years. In addition, the license candidate must supply an endorsement from the company with which he desires to do business to the effect that he has a good business reputation and is worthy of licensure. 31 Pa.Code § 33.21. In order to be issued a new license pursuant to section 603 of the Insurance Department Act (Act),[6] the Commissioner must find an applicant "worthy of licensure." Although the agent may have several existing licenses, the agent must submit a new license application for each new company the agent wishes to represent. The Department has testified that there are no published standards for worthiness and that this decision is purely discretionary on the part of the Department. The Department also testified that this "worthiness" determination is made each time the licensee applies for a new

advise me or I don't like this, change it or whatever comments she wishes to make, and I will give her advice if she calls me up to discuss the matter with her. Basically I will modify the proposed adjudication as she directs, or if she doesn't, if she signs it as it goes up, then it will be issued by the docket clerk.

(Transcript of October 29, 1992 at 59.)

5. Because the challenged licensing regulations, at 31 Pa.Code §§ 33.7, 33.18 and 33.21, are dependent upon the constitutionality of UIPA sections 7, 8 and 9, they are also constitutionally infirm as applied to Petitioners.

6. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 233.

license.[7]

Although it lacks specific standards for determining "worthiness" to grant a new or additional license, the Department admitted that published standards for worthiness exist which apply to the revocation or suspension of a license. The standards are provided for in 31 Pa.Code § 33.7 and § 33.18. Section 33.7 states, in pertinent part:

> (a) The Department may deny an application for agent's or broker's license if any of the following are shown to have occurred:
>
> ....
>
> (3) In the case of a firm or corporate license applicant, where an active or inactive member of such firm or corporation is not eligible for individual license.
>
> ....
>
> (6) The applicant has violated any section of the Commonwealth insurance laws for which violation the insurance commissioner has the authority to revoke, suspend, or refuse to renew any insurance license then in force.
>
> Section 33.18 provides:
>
> (a) The Department may revoke, suspend or refuse to renew the license of any agent or broker upon finding after a hearing that such agent or broker has engaged in conduct which would disqualify him from initial issuance of a license. Such conduct includes the indicated bases for initial denial of a license provided in § 33.7 of this Title....

However, section 33.23(f) states:

> (f) If the company's request for the termination of a license in any way reflects upon the worthiness of the agent, it shall be filed in duplicate. The duplicate copy shall be sent to the agency by the Department. In the absence of valid exception taken to the information and sustained by the agent, the Department will set up a "stop" against any new licenses, either as agent or broker, but without prejudice to licenses in force at time of such termination.

Thus, according to the Department, it is possible for an applicant to be unworthy for a new license while being worthy to hold his current license. In this case, as long as the enforcement action is pending against Petitioners, the Department will deem them "unworthy" for a new licensure but seemingly concede their "worthiness" to retain existing licenses. I disagree with this reasoning.

The Department defends this practice by arguing that it would be unfair to consumers for the Department to be issuing "new" licenses to a party under investigation, because if the party is found to have violated Department regulations with regard to existing licenses and is later determined to be unworthy, then proceedings would have to be instituted to revoke or suspend the newly issued licenses. As a result, the Department contends that until the enforcement proceedings are concluded, all "new" license applications are put on "hold." I cannot accept this justification; obviously, once the licensee is adjudicated "unworthy" by the Department, all existing licenses, whether they are newly issued or not, could be revoked in one proceeding. I believe that an agent or broker who holds a license to do business is deemed worthy by the grant of that license. Until that agent or broker is adjudicated as unworthy by the Department, he should not be denied a new license.

The majority also concludes that Petitioners have not demonstrated that any property right was impinged by the Commissioner and, therefore, that their due process rights were not violated by the "holding" of their license applications. On the contrary, I believe that Petitioners establish a right to due process in this case. In order for due process protection to apply here, Petitioners must demonstrate a substantial property interest. *Lyness.* The Department concedes that *existing* licenses create a property interest requiring due process protection; however, it contends that these same protections do

7. Stone & Edwards has never been denied a license application nor been determined to be unworthy of a license pursuant to section 603 of the Act. Prior to the denial of the license in this case, Emerson Lightner, who has been lawfully writing insurance for various companies since 1946, has never been determined to be unworthy under section 603. Additionally, Gary Lightner, an agent for various companies since 1986, has never been denied a license application nor been determined as unworthy of a license under this section.

not apply to licenses not yet issued. *Replogle v. Liquor Control Board,* 95 Pa.Commonwealth Ct. 614, 506 A.2d 499 (1986), *aff'd,* 514 Pa. 209, 523 A.2d 327 (1987). The Department argues that because Stone and Edwards is seeking *additional* licenses and Emerson Lightner is applying for a *new* individual license, they cannot claim due process protection. (Transcript of October 16, 1992 at 27). I might agree if the line between new and existing licenses were as clear in this case as the Department contends. However, where a notice of challenge to an existing license acts to hold up new applications and puts companies on notice that a question of an agent's worthiness has been raised, which may affect contract renewal of licenses as yet unsuspended, the agent or broker has been effectively deprived of the right to earn a livelihood.[8] Therefore, I would conclude that Petitioners' new license applications are inextricably interwoven with their existing licenses and merit due process protection; that is, a hearing prior to the denial of or interference with the grant of such a license.

The unique circumstances which exist in the insurance industry prevent me from separating the old and new licenses. Because individual insurance companies do not handle all categories of insurance, the agent or broker must be licensed to sell insurance with many separate companies in order to offer a range of policies, such as fire, life, casualty and accident. It is impossible for an agent or broker to sustain a livelihood in the insurance industry unless the agent is free to write policies with any or all companies; therefore, the ability to hold unlimited licenses is essential to the livelihood of the agent or broker. Once licensed, unless that license is subsequently and properly suspended or revoked, an agent must be permitted to pursue his livelihood without interference. Accordingly, the Department cannot deprive a previously licensed agent or broker of the unfettered right to pursue his chosen livelihood by acquiring additional licenses without first affording due process.[9] Government

8. Here, the challenge to Emerson Lightner's worthiness was made a matter of public record through publication in the *Pennsylvania Bulletin.* (May 15, 1992 edition at 18). Emerson Lightner himself was made aware of this notice when a company with which he currently does business inquired about the problem. Clearly then, the Pennsylvania Bulletin notice adversely affected Emerson Lightner's business reputation, as he testified:

Q Because of the matter in the Pennsylvania Bulletin that was brought to your attention, have other people brought to your attention these proceedings that are pending in the Insurance Department, other customers particularly?

A A number of them. Many.

Q A number of them?

A Yes.

Q What is the nature of their statements to you?

A It's a cloud of uncertainty. Because of the accusation, there is an uneasy feeling, which you can immediately detect, and of course, the questions kind of skirt around the edges of that. But it's very disheartening.

Q Are you able to tell the Court what effect, if any, these proceedings have had upon your own personal business and as an officer of Stone and Edwards Insurance Agency?

A It's had a very detrimental effect. Very, very much so.

. . . .

Q Except for these proceedings about which you were first formally notified on January 29, 1992, has your license, in the 46 years, ever been revoked or suspended or renewals denied by the Insurance Department?

A No, sir.

(Transcript of October 29, 1992 at 28–30).

9. Nevertheless, the Insurance Department claims to have the right to put new licenses on hold because of its duty to protect unwary citizens seeking to buy insurance coverage. I suspect the Insurance Department's overriding desire to fulfill its duty to protect Pennsylvania citizens is overstated. I note that in this case, a letter was sent to Stone & Edwards stating that payment of $107,000.00, the alleged overcharged amount, would resolve the matter. I find this ironic in light of the fact that Stone & Edwards has refused to pay because it claims to have committed no wrongdoing; however, by paying the alleged overcharge, thereby conceding the violation, its worthiness would be restored.

I am not suggesting that the practice is uncommon, nor that it does not serve the interest of judicial economy. In fact, this device is used even where criminal acts are charged, although not where the public interest would be jeopardized. *See* Pennsylvania Rule of Criminal Procedure No. 314. However, I do believe that the Insurance Department cannot claim that its "hold" on Petitioners' license applications acts to protect our citizens when the mere exchange of money for alleged unworthy acts would absolve them from this label. (Transcript of October 29, 1992 at 155–160).

may not arbitrarily deny an individual opportunity to engage in a chosen private profession. "Due process demands that an individual whose livelihood is threatened by administrative action be given notice and a hearing to fairly rebut the evidence against him. Particularly should this be so in cases where the action of the administrative body, as regulator of qualifications for an entire field of private employment, may entirely foreclose an individual from employment opportunities." *Birkenfeld v. United States,* 369 F.2d 491, 493–94 (1966).

Emerson Lightner has sixty-three current licenses to sell insurance within the Commonwealth of Pennsylvania through Stone & Edwards. As to his individual license application, Lightner testified that because he has retired from the company, he no longer desires to write policies as an agent of Stone & Edwards where he would have to divide the commission between the insurance company and himself. Emerson Lightner stated that if he had the individual license for which he applied, he would be able to retain the entire commission for all new business that he generates. Thus, Emerson Lightner's income is directly and adversely affected by the denial of a new license. I see no rational basis for distinguishing between Emerson Lightner's continued worthiness to write policies through Stone & Edwards and the Department's assessment of Emerson Lightner's unworthiness, as an officer of Stone & Edwards, to obtain an individual license to write the identical policies. In either case, Emerson Lightner performs the same function and bears the same responsibilities. The only difference is that as an individual license holder, Emerson Lightner would receive 100% of the commission on premiums paid, whereas, as an agent of Stone & Edwards, he would have to share those commissions with the company. So long as the premiums charged meet the statutory guidelines, the Department has no duty or discretion to allocate the profits on sales of insurance policies.

Petitioners' right to earn a living supports an acknowledged, substantial property interest in their existing licenses. Because this same interest is unavoidably affected by the acquisition of additional licenses, I would conclude that the two are inextricably interwoven and cannot be artificially distinguished. "[T]he right to pursue a livelihood or profession" triggers the "protective mechanism of procedural due process." *Lyness,* 529 Pa. at 540, 605 A.2d at 1207.

"[T]he basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Lyness,* 529 Pa. at 542, 605 A.2d at 1207 (quoting *Commonwealth v. Thompson,* 444 Pa. 312, 316, 281 A.2d 856, 858 (1971)). However, Petitioners here did not receive adequate notice of the pending charges nor were they offered a timely hearing by the Department on the challenge to their new licenses; therefore, they were denied the first two elements of due process.

In *Lyness,* our Supreme Court addressed the third prong of due process, holding that the objectivity required by a fair and impartial tribunal could not exist where a single body acted as both prosecutor and adjudicator in the same proceedings and that, therefore, due process protections prohibit the commingling of these functions. Reasoning that due process is applicable to the right to pursue a livelihood or practice a profession, the Court explained:

> In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion under the Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen.

*Id.* 529 Pa. at 542, 605 A.2d at 1207 (emphasis in original). Additionally, in *Dussia,* then Justice, now Chief Justice Nix stated:

> The decision to institute a prosecution is such a fundamental prosecutorial function that it alone justifies concluding a dual capacity where the individual also is charged with the responsibility of making

the ultimate determination of guilt or innocence.

*Dussia,* 466 Pa. at 165, 351 A.2d at 674.

I would hold that a *licensed* agent or broker is entitled to the protections of due process in the acquisition of additional licenses as well as the retention of existing licenses. That was not provided to Petitioners here. Moreover, in proceedings against the Petitioners, the Commissioners' prosecutorial and adjudicatory functions were impermissibly commingled.

Accordingly, because I believe that Petitioners were denied all three elements of due process, I must dissent.