624 A.2d 784

**Odette HARRIS, Petitioner,**

v.

**SCHOOL DISTRICT OF PHILADELPHIA, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1993.

Decided April 21, 1993.

Luther E. Weaver, for petitioner.

Vincent J. Salandria, Asst. Gen. Counsel, for respondent.

Before DOYLE and COLINS, JJ., and LORD, Senior Judge.

DOYLE, Judge.

This is an appeal by Odette Harris from an order of the Secretary of Education dismissing the appeal of her demotion by the School District of Philadelphia (District) from Principal of William Penn High School (William Penn), a classification 7

high school, to Principal of Parkway High School (Parkway), then a classification 5 high school.[1]

The Secretary made the following pertinent findings. Harris began employment with the Philadelphia school system in 1947 and was appointed a principal at William Penn in 1967. Beginning in 1989–1990 the District implemented a "principal transfer protocol" policy. This policy was designed to permit the transfer of principals within the District to accomplish the following objectives:

1.  To provide professional growth opportunities for principals;

2.  To examine schools in terms of their climate and school achievement in order to allow for professional judgment regarding what principals would be likely to administer best at what schools;

3.  To seek to accomplish better achievement on behalf of students; and

4.  To provide self-renewal and professional development for principals.

This policy was not intended to be punitive. Instead, its purpose was to enhance professional development and maximize the possibility for student achievement by using a rotation of principals.

The District Five superintendent, Ms. Theresa Lemme, recommended that the policy be used to transfer Harris. Her rationale for recommending the transfer was contained in a document sent to Mr. Lionel Lauer, the District Associate Superintendent for the Office of Instruction, and stated as follows:

With a student enrollment of 1,100 pupils this school year, Penn's enrollment is at an all time low. The largest of the School District's schools, with 500,000 square feet of space,

1.  Parkway was, on January 2, 1991, reclassified as a class 7 high school. The Secretary of Education, however, determined that that did not moot the appeal. That determination is not challenged here by the District. During oral argument on February 5, 1993, the Court was advised that Parkway was changed again, back to a classification 5 high school.

the facility is woefully underutilized despite its capacity to be an exemplary model as a Communication Magnet.

Data reveal that average daily attendance of students remains at 70%, unacceptably low—This condition has remained static over the years.

Over the years, there have been few gains in academic achievement, with only 10% of the graduates pursuing higher education. The drop-out rate remains high and parental participation low.

This is a school characterized administratively by its resistance to change, and change is essential in order for improvements to be made.

Principal

Mrs. Odette Harris has been the principal of William Penn since 1967.

The lack of improvement in student performance, low student enrollment and overall stagnation of an otherwise committed faculty signal the need for a change in leadership for self-renewal of the principal.

In implementing the policy with regard to Harris, Lemme considered the following factors: community relations, school climate, student attendance, special strengths of Harris, the management structure for building programs, programmatic issues, and curriculum instruction. Lemme, in making the recommendation, was concerned because there had been no movement to increase student population at William Penn as a communication magnet, although thousands of dollars of equipment had been purchased to equip the school. She was also concerned that the pupil suspension rate rose while the number of students enrolled declined, and that scholastic aptitude test scores decreased and fewer students took the test. Lemme was also troubled by what she perceived to be insufficient parent participation at William Penn. The Secretary specifically found that Lemme did not view Harris' performance as unsatisfactory but merely made a professional judgment that there was a "static state of affairs" at William Penn. Although Lemme recommended implementation of the

transfer policy with regard to Harris, the decision to place Harris at Parkway was made by Lauer and interim deputy superintendent Albert I. Glassman.

The Secretary found that in evaluating the transfer of Harris to Parkway, Lauer considered Harris' sensitivity to the students, the way she concerned herself with the individual destinies of the children, and the sensitive way in which she worked with parents. He believed that these personal attributes merited reassignment to Parkway because it gave Harris the opportunity to exercise her concern for individual students in a small personal setting.

The Secretary also found that William Penn is a Class 7 school and at the time of the transfer Parkway was a Class 5 school (it has since been reclassified as a Class 7 school and then back to Class 5). *See supra* n. 1. He further found and it is not disputed by the parties that the transfer did constitute a "demotion," but that Harris did not suffer a loss of pay nor did the "demotion" reflect any criticism of Harris.

Harris sought and was given a hearing by the School Board. The School Board upheld the transfer and Harris appealed to the Secretary who affirmed the determination of the School Board and dismissed her appeal. Further appeal to this Court ensued.

On appeal our scope of review is limited to determining whether or not the Secretary's adjudication was in accordance with the law, whether the petitioner's rights were violated, and whether the findings of the Secretary were supported by substantial evidence. *Patchel v. Board of School Directors of the Wilkinsburg School District,* 42 Pa.Commonwealth Ct. 34, 400 A.2d 229 (1979).

Harris raises three issues for our consideration. First, she maintains that the Secretary committed legal error in upholding the demotion when there was no demonstration of just cause for the personnel action. Second, she asserts that the Secretary committed an error when he determined that her demotion was not an arbitrary and capricious act. Finally, she contends that she was denied due process because of illegal commingling of functions between the prosecutor before

the School Board and the legal advisor to the School Board. We will consider the last issue first.

Harris asserts that because the individual prosecuting the case before the School Board and the individual serving as the legal advisor to the School Board were both employed by the Office of General Counsel for the School District of Philadelphia, an impermissible commingling occurred. She also asserts in her brief that the prosecutor is in fact supervised by the attorney who was legally advising the Board in this matter. However, she does not point to any evidence in the voluminous record to support her allegation that one attorney was supervising another. Case law has established that where such a supervisory relationship exists there is a denial of due process. *See, e.g., Pittsburgh Board of Public Education v. MJN by NJN*, 105 Pa.Commonwealth Ct. 397, 524 A.2d 1385 (1987), *petition for allowance of appeal denied*, 518 Pa. 633, 541 A.2d 1392 (1988). Since here, however, no supervisory relationship was demonstrated and Harris otherwise failed to establish even an appearance of impropriety, her contention fails.

Turning now to the merits, we must decide whether Harris is correct in her assertion that she could be demoted only for just cause.[2] In *Smith v. Darby School District*, 388 Pa. 301, 308, 130 A.2d 661, 666 (1957), our Supreme Court construed Section 1151 of the Public School Code of 1949[3] as follows:

This provision of the School Code does not prohibit a school board from demoting a professional employee, but simply provides that a nonconsensual demotion shall be subject to a right to a hearing. A comparison of the statutory provi-

---

2. There is no dispute by the parties that a demotion in fact occurred. The term "demotion," in the context of a public school professional employee, has been defined as a reassignment to a position which has less importance, dignity, authority, prestige or salary. *Walsh v. Sto-Rox School District*, 110 Pa.Commonwealth Ct. 421, 532 A.2d 547 (1987). There is no dispute that having been transferred from a Class 7 to a Class 5 school Ms. Harris suffered a demotion within the meaning of this definition.

3. Act of March 10, 1949. P.L. 30, *as amended*, 24 P.S. § 11–1151.

sions covering the dismissal of a professional employee with the provision covering the demotion of such employee indicates that the former set forth the reason for which an employee may be dismissed and the procedure to be followed, whereas the latter merely provides the procedure to be followed. The statute provides "why" and "how" an employee may be dismissed but only "how" an employee may be demoted.

This observation led the *Smith* Court to conclude that "[a]ny professional employee may be demoted under the statute provided that such demotion takes place only after a hearing and that such demotion not be made in an arbitrary or discriminatory manner." *Id.* Accordingly, based upon the discussion in *Smith*, we must conclude that the just cause standard is not applicable to demotions of professional employees taken under Section 1151 of the School Code. Rather the appropriate standard by which to measure a demotion is to inquire whether it was made in an arbitrary or discriminatory manner.

The Secretary found that the basis for the demotion was to implement the goals of the transfer policy, that is, to match various principals throughout the Philadelphia school system with the schools where they would be best able to use their individual talents and grow professionally and where the students would most benefit from each individual principal's personality and professional strengths. Such policy is not, in our view, arbitrary or discriminatory. Indeed, *Smith* recognized that a school board may transfer an employee to a different position to increase the efficiency of school administration. Thus, the basis upon which the demotion was effected was not violative of the School Code.

It is, of course, important to recognize and to emphasize that while the term employed here is "demotion," there is nothing in the Secretary's findings which demonstrate that Harris' performance for the School District over the past four decades has been anything but exemplary. Further, the fact that the Secretary chose not to credit the testimony of Harris' expert witness who attacked the statistics contained in the

letter recommending transfer cannot and should not be viewed as any slight upon Harris' abilities as an administrator. The Secretary made it clear in his adjudication that he rejected this expert's evidence because (1) in disputing the daily attendance statistics the expert was unaware that the average daily attendance from the school computer network for the year 1989–1990 was seventy percent; (2) the expert compared the daily attendance averages among three neighboring schools without taking into account the magnet aspect of William Penn and (3) in estimating the number of students going on for higher education the expert included those who intended to go to college but did not actually attend. Such reasons certainly provide a legitimate basis for the Secretary to have rejected this expert's statistical data.

Having concluded that the School District is not restricted to demoting Harris only for just cause and that the transfer policies here under consideration could and did form a legitimate basis for the demotion of Harris, we affirm the Secretary's order.

## ORDER

NOW, April 21, 1993, the order of the Secretary of Education in the above-captioned matter is hereby affirmed.