William MARCHIONNI

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,
Appellant.

Commonwealth Court of Pennsylvania.

Argued May 5, 1998.
Decided Aug. 3, 1998.

Kenneth A. Murphy, Philadelphia, for appellant.

Jeffrey P. Fritz, Philadelphia, for appellee.

Before FRIEDMAN and FLAHERTY, JJ., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the court of Common Pleas of Philadelphia County (trial court) which essentially vacated SEPTA's order that terminated William Marchionni's employment and remanded to SEPTA for a new hearing. We affirm.

Marchionni was employed as a maintenance manager by SEPTA. Marchionni's employment was terminated on December 5, 1996, for directing two of his subordinates, on company time and driving company vehicles, to pick up two envelopes containing football pools and money for Marchionni. Marchionni requested and received a hearing to review the termination.

The hearing was held on February 11, 1997 before Hearing Examiner Thomas Cain. Attorney Vincent Walsh, a member of SEPTA's legal department was appointed to ad-

vise Mr. Cain. Attorney Joseph DeVanney represented SEPTA during the hearing. Attorney DeVanney is also an employee in SEPTA's legal department and thus, a colleague of Attorney Walsh. It is the fact that the two SEPTA attorneys were from the same legal office which Marchionni claims violated his procedural due process rights. Marchionni retained his own counsel to represent him at the hearing. The hearing officer upheld Marchionni's termination.

Marchionni appealed to the trial court which agreed with Marchionni that his procedural due process rights were violated by being denied a fair and impartial hearing. The trial court ordered SEPTA to appoint a new hearing examiner to conduct a new hearing. The trial court also ordered SEPTA to appoint an independent counsel to advise the new hearing examiner. SEPTA appealed the trial court's order to this court.

Initially, Marchionni filed a motion to quash the appeal as being from an interlocutory order. A single judge of this court granted Marchionni's motion to quash. SEPTA filed a motion for reconsideration. This court granted SEPTA's motion for reconsideration, vacated the single judge's order to quash and ordered that the motion to quash be listed for argument with the merits of the appeal. Thus, the issue of whether the appeal should be quashed is ripe for this Court's review.

Marchionni argues that the trial court's order remanding this case to SEPTA to conduct a new hearing is not a final order pursuant to Pa. R.A.P. No. 341 nor is it an interlocutory order made appealable as of right pursuant to Pa. R.A.P. No. 311. Thus, according to Marchionni, the order of remand is an interlocutory order which may not be appealed.

■ SEPTA argues that the order of remand based as it is upon the trial court's determination that the procedures employed before SEPTA violated Marchionni's due process rights is appealable pursuant to Pa. R.A.P. No. 311(f) which provides that

(f) **Administrative remand.** An appeal may be taken as of right from: (1) an order of common pleas court or govern-ment unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of discretion; or (2) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue which would ultimately evade appellate review if an immediate appeal is not allowed.

SEPTA argues that if this court quashes its appeal, the issue of whether the procedures utilized by SEPTA will never get a hearing before this court because after SEPTA conducts a new hearing pursuant to the trial court's remand order, the issue of the procedures utilized at the first hearing (which is the subject of this appeal) would be moot and only the issues at the second hearing would be the proper subject of an appeal to this court.

Marchionni appears to argue that after the second hearing pursuant to the trial court's remand order:

Septa [sic] may appeal to the Court of Common Pleas and/or the Commonwealth Court.... The issue of the propriety of remand of this matter by Judge Levin [the trial court] does not escape appellate review. There is no need for an immediate appeal by Septa as the issue which forms the basis for its appeal has been preserved. The procedures employed at such new hearing may be challenged upon the conclusion of the new post-determination hearing and entry of a final order.

Marchionni's brief at pp. 20–21. We find Marchionni's argument unpersuasive.

We agree with SEPTA that the only issues which would be appealable after the second hearing would be matters relating to the second hearing. *See, e.g., Lewis v. School District of Philadelphia,* 690 A.2d 814, 816 (Pa.Cmwlth.1997) (finding that an appeal from a trial court's order of remand to the administrative agency for it to conduct a new hearing is proper since the legal issues relating to the agency's first adjudication would become moot after the second hearing). *Accord Philadelphia Commission on Human Relations v. Gold,* 95 Pa.Cmwlth. 76, 503

A.2d 1120, 1121 (1986) ("if we quash the appeal now the question of impermissible commingling will never be reached, for it is certain that once a new hearing is held any impropriety in the previous hearing would be moot on appeal...."). Accordingly, the motion to quash is denied and we will proceed to address the merits of this case.[1]

As a threshold matter, SEPTA asserts that Marchionni's argument that the procedures utilized by SEPTA in conducting its hearing violated his due process rights was waived because Marchionni did not raise this issue before SEPTA's hearing officer and thus he was precluded from raising the issue before the trial court and therefore also before this court. In support of its contention, SEPTA cites the Local Agency Law, 2 Pa. C.S. § 753(a) which provides in relevant part that a

> party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record or the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

Marchionni responds by pointing to the last phrase of the statute that permits a party to raise an issue for the first time in the trial court when "allowed by the court upon due cause shown." Marchionni suggests that the trial court allowed Marchionni to raise the issue of procedural due process because he found due cause within the meaning of the statute.

■ We agree with Marchionni that the trial court permitted him to raise the due process issue even though he had not raised it before SEPTA. *Cf. Anderson v. Erie Insurance Group,* 384 Pa.Super. 387, 558 A.2d 886 (1989) (when an appellant's failure to

raise an issue below does not interfere with the reviewing court's ability to exercise effective review, the reviewing court may nevertheless address the issue.) Thus, we conclude that the trial court, at least, impliedly found that Marchionni showed due cause within the meaning of the statute. Moreover, we detect no abuse of discretion in the trial court's decision to address the constitutional issue of due process, for a violation of constitutional dimensions need not necessarily be raised at the administrative level under pain of waiver. *See Newcomer v. Civil Service Commission of Fairchance Borough,* 100 Pa.Cmwlth. 559, 515 A.2d 108, 110 (1986), *alloc. denied,* 514 Pa. 626, 522 A.2d 51 (1987) ("The Commission is incorrect that a constitutional challenge must be raised at the administrative level."). *Cf. Apgar v. State Employe's Retirement System,* 655 A.2d 185, 188 (Pa.Cmwlth.1994) (appellant waived issue by not raising it before the Administrative Agency but the Commonwealth Court would nevertheless address the issue because of its future importance). Thus, we do not find a basis for reversing the trial court on this issue.

SEPTA initially argues that the trial court erred in applying an incorrect standard in determining whether Marchionni's procedural due process rights were violated. SEPTA alleges that the trial court erroneously applied a per se/appearance of impropriety standard. SEPTA alleges that the trial court held that whenever the prosecutorial and adjudicative functions are performed by two attorneys from the same office, then procedural due process is always violated. In support of its contention, SEPTA cites to the trial court's opinion at p. 2, n. 1. That footnote reads in toto as follows:

> Appellant asserts that SEPTA violated his procedural due process rights by allowing attorneys from the same office to serve as prosecutor and as advisor to the hearing examiner. This complaint related to the potential for conflict arising out of the fact that while Thomas Walsh, a SEPTA attorney, was appointed as Counsel to SEPTA's

---

1. Appellate review over a trial court's order remanding a case to a local agency is limited to determining whether the trial court abused its discretion or committed an error of law. *Racunas v. Ringgold School District,* 70 Pa.Cmwlth. 221, 452 A.2d 917 (1982).

hearing examiner, another SEPTA attorney, was responsible for "prosecuting" the appeal before the examiner.

Trial court slip op. at p. 2, n. 1. In reading the trial court's opinion we cannot say that we necessarily agree with SEPTA's characterization of the opinion as one applying a per se standard. In fact, the opinion deals almost exclusively with the question of why SEPTA's appeal is improper because the trial court's remand order was not final and appealable according to the trial court.

Nevertheless, the trial court did make the following several statements:

> I think your legal department has a right to prosecute and enforce your regulations which is in effect what you are doing, but my assumption is that you can't have one of your co-counsel be the advisor to the judge without **creating an appearance of impropriety. And that's the difficulty with your procedure.**

Reproduced Record (R.R.) at 290(a)— 291(a)(emphasis added). The following exchange occurred between Mr. Fritz, counsel for Marchionni, and the trial court:

> MR. FRITZ: Reviewing the record, there was no consultation between Mr. Walsh and Mr. Kane [sic, should be "Cain"], but the point I wanted to make is that obviously, Mr. Kane is turning to Mr. Walsh at any point after the procedure and before he issues his opinion for any legal advice regarding –
>
> THE COURT: And we can't tell whether he did or didn't and that creates the **appearance of impropriety.**

R.R. at 293(a)(emphasis added). See also R.R. at 296(a) where the trial court again uses the "appearance of impropriety" language. Assuming for the sake of argument that the trial court used the "appearance of impropriety standard" the question we are confronted with is whether this constituted legal error.

SEPTA contends that the use of the appearance of impropriety standard does constitute a legal error and instead, the court should have used an actual prejudice test. SEPTA contends that the proper test is whether the functions performed by the prosecuting attorney and the advisor to the adjudicator were adequately separated so that there was no actual prejudice. In support of its contention, SEPTA cites *Philadelphia Commission on Human Relations v. Gold,* 95 Pa.Cmwlth. 76, 503 A.2d 1120 (1986) and *Human Relations Commission v. Thorp, Reed and Armstrong,* 25 Pa.Cmwlth. 295, 361 A.2d 497 (1976). In *Gold,* this court stated that the "trial court, in utilizing the appearance of impropriety test, employed the incorrect legal standard." *Gold,* 503 A.2d at 1122.

In response, Marchionni asserts that the cases relied upon by SEPTA were decided prior to the landmark case of *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992), which set the benchmark for procedural due process analysis in Pennsylvania, according to Marchionni.[2]

In *Lyness,* eight members of the state Board of Medicine had voted to initiate a prosecution of Dr. Lyness. A hearing officer found the allegations against Dr. Lyness to be true and ordered his license suspended. The State Board of Medicine reviewed the lower adjudication and voted to permanently revoke the license of Dr. Lyness rather than merely suspend his license. Of the eight members of the Board of Medicine who had

---

2. The *Lyness* case dealt specifically with the due process protections afforded under the Pennsylvania Constitution as opposed to the United States Constitution. Marchionni asserted his rights under the Pennsylvania Constitution as a basis for his claim that the procedures utilized by SEPTA violated his state constitutional rights to due process. *See* Marchionni's brief at p. 15 wherein Marchionni states that

> Pennsylvania law requires that the procedural due process requirements of the United States **and Pennsylvania** Constitutions mandate that any commingling of adjudicatory and prosecutorial functions, which creates

the "appearance of bias" and where there are no procedural safeguards, or "walls of division" implemented to ensure a fair and impartial hearing process, is a violation of procedural due process, without a showing of "actual prejudice."

(emphasis added). The protections of due process afforded under the Pennsylvania Constitution are broader than the protections afforded under the United States Constitution. *Stone & Edwards v. Department of Insurance,* 161 Pa. Cmwlth. 177, 636 A.2d 293, 297 (1994), *aff'd,* 538 Pa. 276, 648 A.2d 304 (1994).

voted to initiate prosecution of Dr. Lyness, three members participated in the decision to revoke his license. On appeal to the Supreme Court of Pennsylvania, Dr. Lyness asserted that the Board members' voting both to initiate prosecution of him and voting to find him guilty and to revoke his license impermissibly mixed prosecutorial and adjudicative functions in one body in violation of his procedural due process rights. The Supreme Court agreed. In the course of its opinion, the Supreme Court stated that

> [i]n determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion in Pennsylvania that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen.... Then–Justice, now Chief–Justice Nix, writing for this Court in *Dussia* [*v. Barger*, 466 Pa. 152, 351 A.2d 667 (1976)], made clear that "actual bias" was not the watchword in ferreting out violations of due process under the Pennsylvania Constitution.

*Lyness,* 529 Pa. at 542–43, 605 A.2d at 1207–08 (1992)(emphasis in original). The Court also stated in clear unequivocal terms that [w]hether or not any actual bias existed as a result of the Board acting as both prosecutor and judge is inconsequential; the potential for bias and the appearance of non-objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution." *Id.* at 548, 605 A.2d at 1210. Thus, it would appear that application of the "appearance of impropriety" standard is not legal error but specifically endorsed by the Pennsylvania Supreme Court. *See, e.g., Stone & Edwards,* 636 A.2d at 297 ("the Pennsylvania due process rights are more expansive in that, unlike the Fourteenth Amendment, a violation of due process occurs, **even if no prejudice is shown,** when the same entity or individual participates in both the prosecutorial and adjudicatory aspects of a proceeding.")(emphasis added).

However, SEPTA argues that the appearance of impropriety standard is not applicable to every allegation of commingling of prosecutorial and adjudicative functions. In support of its contention, SEPTA cites this court's decision in *Harris v. School District of Philadelphia,* 155 Pa.Cmwlth. 169, 624 A.2d 784 (1993), *alloc. denied,* 538 Pa. 616, 645 A.2d 1319 (1994). In *Harris,* the School District transferred a principal from one school to another school. The transfer was determined to constitute a "demotion" but the principal did not suffer any loss in pay nor did the demotion reflect any criticism of the principal. *Harris* 624 A.2d at 786. The principal requested a hearing before the School Board. At this hearing, the attorney representing the school district before the Board and the attorney acting as legal counsel for the Board were both employed by the Office of General Counsel of the School District of Philadelphia. Upon appeal to this court, the principal asserted that the fact that these two attorneys were employed by the same entity violated procedural due process by impermissibly commingling the prosecutorial and adjudicative functions. This court rejected that claim finding that the principal "failed to establish even an appearance of impropriety." *Id.* 624 A.2d at 786. Thus, this Court applied the "appearance of impropriety" standard in *Harris* and simply concluded that the principal therein did not meet this standard. Thus, far from establishing that the "appearance of impropriety" standard is not applicable in all procedural due process claims in Pennsylvania, as SEPTA claims, *Harris* applied that very standard and simply did not find it to have been met under the particular facts of that case. Hence, we reject SEPTA's claim that the appearance of impropriety standard is not applicable herein.

SEPTA suggests however that the facts of the *Harris* case and this case are legally indistinguishable and because there was no violation of due process in *Harris,* there cannot be a violation of due process here. We disagree.

We note that in *Harris* the asserted due process violation was merely that both attorneys were employed by the same office of General Counsel and that one supervised the other. This court found that the principal in *Harris* did not point to any evidence of rec-

**564**

ord to support the claim of such a supervisor-supervisee relationship. Apparently, the principal in *Harris* also did not adduce any evidence as to the set-up or operations of the Office of General Counsel for the School District. It does not appear sufficient that there be an allegation merely that two attorneys are employed by the same entity. More is required; there must be some showing that there are no walls of division between those performing a prosecutorial function and those performing an adjudicative function. *See Stone & Edwards v. Department of Insurance*, 161 Pa.Cmwlth. 177, 636 A.2d 293, 297 (1994), *aff'd*, 538 Pa. 276, 648 A.2d 304 (1994)("a single administrative agency may exercise both prosecutorial and adjudicative functions if 'walls of separation' are constructed within an agency that clearly separates those two functions.") Here, the trial court was apparently satisfied that such walls of separation were not in place, thus creating an appearance of impropriety. In *Harris,* from a reading of the published opinion, it appears that no such showing was made. Thus, *Harris* and this case are distinguishable. We detect no abuse of discretion or error of law in the trial court's disposition of this case and accordingly affirm the order of the trial court remanding this case to SEPTA for a new hearing with a new hearing officer and independent counsel to advise the hearing officer.

### ORDER

NOW, August 3, 1998, the order of the Court of Common Pleas of Philadelphia County, dated July 29, 1997, and docketed at Civil No. 9703-3512, is hereby affirmed.

LEADBETTER, J., did not participate in the decision in this case.