IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Center for Coalfield Justice, : 
Washington Branch NAACP, : 
Bruce Jacobs, Jeffrey Marks, : 
June Devaughn Hython, : 
Erika Worobec, Sandra Macioce, : 
Kenneth Elliott, and David Dean : 
: 
v. : No. 1172 C.D. 2024
: Submitted: September 10, 2024
Washington County Board of : 
Elections, Republican National : 
Committee and Republican Party : 
of Pennsylvania, : 
: 
Appellants : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: September 24, 2024


The Washington County Board of Elections (County Board), the Republican National Committee (RNC), and the Republican Party of Pennsylvania (RPP) (collectively, Appellants) appeal from an order of the Court of Common Pleas of Washington County (trial court), which granted summary judgment, in part, in favor of Center for Coalfield Justice, Washington Branch NAACP (Interest Groups), Bruce Jacobs, Jeffrey Marks, June Devaughn Hython, Erika Worobec, Sandra Macioce, Kenneth Elliott, and David Dean (Electors or the Electors) (collectively,

Appellees).  The trial court determined that the County Board's ballot return notice policy (Policy), implemented for the 2024 Primary Election, violated Electors' procedural due process rights and ordered the County Board to: (1) notify electors whose mail-in ballot packets were segregated on suspicion of a disqualifying error, so that the voter may challenge, but not cure, the purported defect; and (2) document that the elector had not successfully voted in the elector's respective district poll register to ensure that the elector may cast a provisional ballot.  On appeal, Appellants argue, *inter alia*, that the trial court erred by concluding the Policy implicated procedural due process as a legislative act.  Upon careful review, we affirm.

The parties do not dispute the facts giving rise to this matter.  For the purposes of the 2023 primary and municipal elections, the County Board implemented a notice and cure procedure for electors whose mail-in and absentee ballots contained disqualifying errors, *e.g.*, the ballot lacked a signature or contained an incorrect date.  However, at a meeting held on April 11, 2024, the County Board voted to discontinue this practice for the primary election held on April 23, 2024 - even though the County Board had already segregated 170 mail-in ballot packets for disqualifying errors.  This new Policy mandated that all mail-in ballot packets received by the County Board were to be marked in the State Uniform Registry of Electors (SURE) system[1] as "record-ballot returned."  The Policy also prevented inquiring electors from receiving notice as to whether their ballot had been segregated, and on election day, the district poll register only indicated whether an

---

[1] As this Court has previously explained, "[t]he SURE system is the Statewide Uniform Registry of Electors, the statewide database of voter registration maintained by the Department of State and administered by each county." *In re Nomination Petition of Morrison-Wesley*, 946 A.2d 789, 792-93 n.4 (Pa. Cmwlth. 2008).

elector had requested a mail-in packet and whether it was received; the register similarly did not indicate whether the ballot had been segregated.

Following a Right-to-Know Law[2] request, the County Board disclosed that 259 timely received mail-in ballots had been segregated and disqualified for errors. No such elector cast a provisional ballot on election day, nor did any elector contest the segregation of their ballot under Section 1407 of the Pennsylvania Election Code (Election Code).[3]

On July 1, 2024, Electors and Interest Groups filed a complaint in the trial court asserting that the Policy had violated their procedural due process right under the Pennsylvania Constitution and sought a preliminary injunction to enjoin the County Board from continuing the Policy for the 2024 General Election. Following the joinder of the RNC and RPP in the action, the parties agreed to resolve the dispute by way of cross-motions for summary judgment.

In an opinion and order filed on August 23, 2024, the trial court granted Appellees' motion for summary judgment, in part, as well as their motion for permanent injunction, while denying Appellants' cross-motion for summary

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[3] Section 1407(a) of the Election Code provides in pertinent part:

> (a) **Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election**, or regarding any recount or recanvass thereof under sections 1701, 1702, and 1703 of this act, **may appeal therefrom within two days after such order or decision shall have been made, whether then reduced to writing or not**, to the court specified in this subsection, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief.

Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §3157(a) (emphasis added).

judgment. First, however, the trial court resolved Appellants' arguments pertaining to justiciability. *See* Trial Court Op., 8/23/24, at 8-12. In relevant part, the trial court determined that both Electors and Interest Groups possess standing. *Id*. at 10-12. Electors suffered sufficient harm under the Policy to confer standing as they were not afforded notice of any disqualifying error such that they were not provided a meaningful opportunity to cast a provisional ballot or contest their disqualification. *Id*. at 10. Likewise, the trial court found that Interest Groups possess standing as their programs aimed at promoting voter participation were adversely impacted by the Policy, because Interest Groups could not provide clear and accurate information to electors. *Id*. at 11.

Next, the trial court concluded that Appellees' action was not precluded by ripeness or mootness. Trial Court Op. at 11-12. The trial court disagreed with Appellants' assertion that Appellees' proffered harm was entirely speculative and thus was not ripe for judicial review. *Id*. Rather, the trial court agreed that the Policy would continue "unless and until" the County Board undertook a new policy. *Id*. Regarding mootness, the trial court was unpersuaded by Appellants' argument that the Department of State's modification of the SURE system e-mail notification mooted the controversy. *Id*. at 13. In the trial court's view, any modification to the SURE system would nevertheless leave electors unaware of their ballot status, such that electors would still be without notice that they should cast a provisional ballot or contest their disqualification. *Id*.

Concerning the merits, the trial court concluded that the Policy violated Electors' procedural due process rights. In so doing, the trial court first found that the County Board's decision to segregate a mail-in ballot for a disqualifying error constituted an adjudication, rather than a legislative act:

4

> Here, like in [*Londoner v. City and County of Denver*, 210 U.S. 373 (1908),] or *Washington v. Department of Corrections*, 306 A.3d 263 (Pa. 2023)], the process of elections office staff screening and segregating mail-in ballots for those with disqualifying errors and then coding the ballot in the SURE system in a manner which provides no way for an individual voter to know that their ballot has been segregated affects a small portion of all mail-in voters and results in an adjudicative action.

Trial Court Op. at 14-15.

Subsequently, the trial court determined that Electors possess a liberty interest in challenging the County Board's canvassing determination. Trial Court Op. at 17. In the trial court's view, Section 1407 of the Election Code created a statutory right in Electors to contest the County Board's determination that the Elector had failed to properly cast their ballot. *Id*. As such, the trial court sought to ascertain the procedural guarantees owed under this liberty interest. Ultimately, the court below declined to follow the County Board's suggestion to apply the *Anderson/Burdick* framework, as articulated in *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).[4] Trial Court Op. at 18.

---

[4] The *Anderson/Burdick* framework provides:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights [U.S. Const. amends. I, XIV]. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions.

*Burdick*, 504 U.S. at 434 (citations omitted).

Instead, the trial court applied the following three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976),[5] by balancing: "(1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures." Trial Court Op. at 18-19 (citing *C.S. v. Department of Human Services, Bureau of Hearings and Appeals*, 184 A.3d 600, 607 (Pa. Cmwlth. 2018)). In applying that test, the trial court considered the statutory right under Section 1407 of the Election Code to be the private right affected by the Policy, which incurred a high risk of erroneous deprivation because the Policy precluded the notice requisite to exercise that statutory right. Trial Court Op. at 21. Similarly, the trial court did not view providing notice to electors whose ballots were segregated to place a heavy burden on the County Board as it merely involved using a different code already available to the Board in the SURE system.[6] *Id*.

Still, Appellants argued that Appellees' claim was precluded by our Supreme Court's decision in *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 372-74 (Pa. 2020). Trial Court Op. at 19. The trial court disagreed, finding that *Boockvar* was distinguishable from Appellees' claim: the issue before the High Court therein was whether the free and equal elections clause[7] of the Pennsylvania

---

[5] Although the trial court stated that it considered all of the parties' arguments before determining that the *Mathews* test was the proper test in this instance, it did not explain its reason for doing so. *See* Trial Court Op. at 19.

[6] The trial court also observed that the *Anderson/Burdick* framework would not compel a different outcome. Trial Court Op. at 21.

[7] The free and equal elections clause provides: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const. art. I, §5.

Constitution required all County Boards of Elections to develop notice *and* cure procedures. *Id*. at 19-20. Yet, here, Appellees assert that the County Board failed to guarantee Electors' procedural due process rights[8] by refusing to give notice that their ballots had been segregated, so that they might exercise their statutory right to contest this disqualification. *Id*. As such, the trial court did not view Elector-Appellees' complaint as implicating an opportunity to cure procedure, as in *Boockvar*. *Id*. at 20-21.

Finally, the trial court rejected the County Board's attempt to portray casting a provisional ballot as an "illusory" means of curing Elector-Appellees' defective ballots and the attendant argument that Elector-Appellees' sought-after relief would involve rewriting the Election Code to count a mail-in elector's defective ballot. Trial Court Op. at 20-21. On that point, the trial court found the governing provisions of the Election Code to be ambiguous. For example, where Section 1306-D(b)(2), 25 P.S. §3150.16(b)(2)[9] (emphasis added), provides that "[a]n elector who requests a mail-in ballot and who is not shown on the district register as having *voted* may vote by provisional ballot . . . [,]" Section 1210, 25 P.S. §3050 (emphasis added), provides "[a] provisional ballot shall not be counted if: . . . the elector's absentee ballot or mail-in ballot is timely *received* by a county board of elections." *Id*. at 25. Ultimately, the trial court resolved the ambiguity by determining that the term "voted" necessarily included having "the opinion expressed in the ballot" counted. *Id*. at 26. Because of the ambiguity, the trial court

---

[8] Pennsylvania's due process clause provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, §1.

[9] Added by the Act of October 31, 2019, P.L. 552, No. 77 (Act 77).

7

denied Appellees' motion for summary judgment on this limited point, but also found a permanent injunction to be warranted due to the nature of the harm. *Id*. at 26-27.

> Hence, the trial court entered the following order:
>
>> For the reasons set forth above, this [c]ourt finds there are not genuine issues of material fact and [Appellees] are entitled to judgment as a matter of law regarding their right to notice regarding their ballot status in order to challenge the canvass board's decisions. As such, [Appellees'] motion for summary judgment is GRANTED in that regard. [The County Board] is hereby ordered to notify any elector whose mail-in packet is segregated for a disqualifying error, so the voter has an opportunity to challenge (not cure) the alleged defects. [The County Board] shall input the accurate status of the mail-in packet and provide the status to the elector if requested.
>>
>> This [c]ourt finds that [] there are genuine issues of material fact regarding all other matters[;] therefore, the remainder of the motion for summary judgment filed by the [Appellees] as well as the motions for summary judgment filed by [Appellants] are all DENIED. [Appellees'] request for a permanent injunction is GRANTED and [the County Board] shall properly document in the poll books that the elector whose mail-in packet is segregated for a disqualifying error has not "voted" in accordance with 25 P.S. §3150.16 and choose the most appropriate selection in the SURE system to reflect as such.

Trial Court Op. at 27-28.

On appeal to this Court, Appellants raise the following issues for our review: (1) whether Appellees' claim is justiciable; (2) whether *Boockvar* forecloses Appellees' claim; (3) whether the trial court erred by finding that the Policy violated Electors' procedural due process rights; (4) whether the trial court effectively mandated a notice and cure procedure; and (5) whether the trial court's order

8

contradicts the Election Code. We have no difficulty concluding that Appellants' arguments are unavailing - indeed, many of them have already been considered and flatly rejected by this Court's recent decision in *Genser v. Butler County Board of Elections* (Pa. Cmwlth., Nos. 1074, 1085 C.D. 2024, filed September 5, 2024), *petitions for allowance of appeal filed*, (Pa., Nos. 240-241, 241-243 WAL 2024, filed September 8, 2024).[10]

Preliminarily, the crux of Appellees' action is their request for injunctive relief, such that our inquiry focuses on the trial court's grant thereof. On that point, "appellate review in [cases involving the grant of a permanent injunction] is whether the lower court committed an error of law in granting or denying the permanent injunction. Our standard of review for a question of law is *de novo*. Our scope of review is plenary." *Buffalo Township v. Jones*, 813 A.2d 659, 664 n.4 (Pa. 2002).

Further, "[t]o justify the award of a permanent injunction, the party seeking relief must establish[] that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the requested relief." *Kuznik v. Westmoreland County Board of Commissioners*, 902 A.2d 476, 489 (Pa. 2006). "However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Buffalo Township*, 813 A.2d at 663-64.

---

[10] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Neither the trial court nor the parties had the benefit of this Court's recent decision in *Genser* at the time of hearing. Therein, two electors in Butler County attempted to vote by mail-in ballots in the 2024 Primary Election, but due to disqualifying errors,[11] the ballots were not counted. *Id*. at 2-3. As such, the Butler County Board of Elections (Butler County Board) updated the SURE system to reflect that the electors' ballots would not be counted, which triggered an automatic e-mail to be sent to the electors explaining the same. However, the email also stated: "you can go to your polling place on election day and cast a provisional ballot." *Id*. at 3 (emphasis removed). Despite casting provisional ballots in accord with the e-mail's instruction, the provisional ballots were also rejected. *Id*. The electors subsequently filed a petition for review in the Court of Common Pleas of Butler County (Common Pleas Court), arguing, *inter alia*, that the Butler County Board rejected their provisional ballots in violation of the Election Code. *Id*. Ultimately, the Common Pleas Court dismissed the electors' petition "as [the Butler County Board's] actions were in accord with Section [1210(a.4)(5)(i) and (ii)(F) of the Election Code,] 25 P.S. §3050(a.4)(5)(i), (ii)(F), which it read to foreclose the counting of provisional ballots cast by electors who had timely submitted mail-in ballots, even if those electors' timely submitted main-in ballots were previously rejected." *Id*. at 10-11.

On appeal, this Court considered the following provisions of the Election Code. *See Genser*, slip op. at 11-13. The "Having Voted Clause" under Section 1306-D(b)(2) of the Election Code provides: "An elector who requests a mail-in ballot and who is not shown on the district register as **having voted** may vote by provisional ballot under Section 1210(a.4)(1)." 25 P.S. §3150.16(b)(2)

---

[11] The electors failed to place their mail-in ballots in a secrecy envelope required by Section 1306-D(a) of the Election Code, 25 P.S. §3150.16(a). *See Genser*, slip op. at 3.

(emphasis added). However, the "Casting Clause" and the "Timely Received Clause" under Section 1210(a.4)(5)(i) and (ii)(F) of the Election Code provide:

> (5)(i) Except as provided in subclause (ii), if it is determined that the individual was registered and entitled to vote at the election district where the ballot was cast, the county board of elections shall compare the signature on the provisional ballot envelope with the signature on the elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did not **cast** any other ballot, including an absentee ballot, in the election.
>
> (ii) A provisional ballot shall not be counted if:
>
> \* \* \*
>
> (F) the elector's absentee ballot or mail-in ballot is **timely received** by a county board of elections.

25 P.S. §3050(a.4)(5)(i), (ii)(F) (emphasis added).

In construing these three provisions, this Court determined that the Casting and Timely Received Clauses are ambiguous when considered alongside the Having Voted Clause. *Genser*, slip op. at 24. Specifically, the Court had to determine "the meaning of *vote*, *voted*, *timely received*, *cast*, and *ballot*." *Id.* (emphasis in original). The Court explained:

> There is no congruence across the language of these clauses. They use different verbs (sometimes used adjectivally as past participles). *Vote* or *having voted* is not *received* is not *cast*. All three sections refer to the noun *ballot* but none defines it. **This lack of congruence is apparent here where [the e]lectors' ballots were timely received, but they had not voted**.

*Id.* at 24 n.16 (emphasis added).

11

To resolve this ambiguity, the Court first analyzed the Election Code's objective:

> As observed by our Supreme Court in *Boockvar*, "the purpose of and objective of the Election Code, which contains Act 77 [12], is 'to obtain freedom of choice, a fair election and an honest election return.'" . . . . This objective is advanced by ensuring that each qualified elector has the opportunity to vote exactly once in each primary or election. Not zero times, which would deprive an elector of the freedom of choice, and not twice, which would prevent an honest election return.

*Genser*, slip op. at 29 (citation omitted). The Court observed that the purpose of Act 77 was to make voting more convenient for qualified electors and stated: "Despite its use of ambiguous terms as described above, the General Assembly clearly included the Having Voted Clause to give mail-in electors the opportunity to vote provisionally so long as they are 'not shown on the district register as having voted' by mail." *Id.* at 29-30.

In *Genser*, this Court ultimately held that:

> The General Assembly obviously *did* intend that mail-in and absentee voters can vote by provisional ballot if they have not already voted an earlier ballot, as [Sections 1306(b)(2)[13] and 1306-D(b)(2) of the Election Code, 25 P.S. §§3146.6(b)(2), 3150.16(b)(2)] provide. This entails the proposition that the provisional ballots so authorized could be counted under some circumstances. The General Assembly *did not* intend for those authorized provisional

---

[12] Act 77 established state wide universal mail-in voting. Section 1301-D-1307-D of the Election Code, added by Act 77, 25 P.S. §§3150.11-3150.17. In addition, however, "Act 77 eliminated the option for straight-ticket voting; moved the voter registration deadline from thirty to fifteen days before an election; allocated funding to provide for upgraded voting systems; and reorganized the pay structure for poll workers, along with other administrative changes." *McLinko v. Department of State*, 279 A.3d 539, 543 (Pa. 2022).

[13] Added by the Act of March 6, 1951, P.L. 3.

12

ballots to be rendered meaningless, essentially void *ab initio*, whenever the elector has made an earlier but unsuccessful *attempt* to cast or vote a ballot. . . .

**We reject [the a]ppellees' argument that reaching this result would effectively write a mandatory ballot-curing procedure into the [Election] Code** . . . . the [Election] Code independently authorizes electors to vote by provisional ballot, and when properly construed, it requires the [c]ounty to count the provisional ballots here. That does not depend on any ballot curing process, whether optional or mandatory. The provisional ballot is a separate ballot, not a cured initial ballot. **To conclude, as the [t]rial [c]ourt did, that 'any chance . . . to cast[] a provisional vote[] constitutes a 'cure'' is to both overread [*Boockvar*] and to read the provisional voting sections out of the [Election Code].**

*Genser*, slip op. at 32-33 (emphasis added).

Therefore, we are persuaded by this Court's decision in *Genser* and reject many of Appellants' claims for the same reasons asserted therein: (1) *Boockvar* is distinguishable from the instant matter; (2) the Election Code created a statutory right to cast a provisional ballot as a "failsafe" to ensure otherwise qualified electors may cast their vote and have it counted; (3) which does not amount to "curing" a defective mail-in ballot. Hence, the remaining issues pertain to justiciability and whether procedural due process requires the County Board to afford Appellees notice of their disqualification. On those issues,[14] we see no reason to depart from the laudable reasoning of the trial court.

---

[14] On the issue of justiciability, we rely on the trial court's opinion. However, we also observe that the County Board held a public meeting on September 12, 2024. Per the meeting agenda, the County Board elicited public comment and also discussed the "[s]tatus of [the] RNC [a]ppeal." However, there is no indication that the County Board did, in fact, undertake a new policy for the 2024 General Election. The agenda is available on the County Board's website: 9_12_24_Board_of_Elections_Public_Agenda_cc5b0a08ff.pdf (washingtoncopa.gov) (last visited 9/19/24). *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (Courts **(Footnote continued on next page…)**

Appellants once again argue that the Legislative Act Doctrine bars the application of procedural due process here. Appellants' Brief at 22-23. More particularly, Appellants believe the County Board's choice of input in the SURE system is merely a policy choice rather than an adjudication. *Id*. We reject that view.

The Legislative Act Doctrine distinguishes between government conduct which is legislative in character or adjudicatory in character. *Washington*, 306 A.3d at 297-97; *Small v. Horn*, 722 A.2d 664, 676 (Pa. 1998). As indicated, procedural due process protections only extend to adjudicatory government conduct. *Id*.

> Adjudicative agency actions are those that affect one individual or a few individuals, and apply existing laws or regulations to facts that occurred prior to the adjudication. Agency actions that are legislative in character result in rules of prospective effect and bind all, or at least a broad class of, citizens.

*Sutton v. Bickell*, 220 A.3d 1027, 1032 (Pa. 2019).

Here, as the trial court aptly reasoned, the County Board's canvassing determinations amount to an adjudication because the canvassing determinations apply the existing provisions of the Election Code and prevent a small number of otherwise qualified electors from having their vote counted. It is true that the Policy ensures that all mail-in and absentee voters are left unaware as to whether they will have their vote counted. The critical difference, however, is that some voters, like Electors, are thereby deprived of their two-day window to contest their disqualification and do not have the requisite notice of their right to cast a provisional

---

may take judicial notice of information made publicly available by government entities, including on their websites.).

14

ballot on election day. Hence, unlike a legislative act, the Policy effectively only binds a small class of citizens, who are prevented from exercising their constitutional and statutory rights, even if it leaves all mail-in voters in Washington County in the dark.

Next, Appellants repeat their argument that Electors possess no liberty interest in contesting the segregation and disqualification of their mail-in ballot under Section 1407 or the right to have their provisional ballot counted as a failsafe under Section 1306-D. Appellants' Brief at 23-30. In their view, the trial court's decision is aimed at the Elections Office staff's initial segregation of the ballot and the attendant SURE system input, such that Section 1407 is inapplicable because it pertains to the *canvass board's* decision which takes place after election day. *Id*. at 26-27. Appellants even go so far as to suggest that the trial court's holding otherwise betrays the court's ulterior motive: to judicially mandate a notice and cure procedure. *Id*. We firmly disagree.

First, "[t]he protections of due process afforded under the Pennsylvania Constitution are broader than the protections afforded under the United States Constitution." *Marchionni v. Southeastern Pennsylvania Transportation Authority*, 715 A.2d 559, 562 n.2 (Pa. Cmwlth. 1998).[15] Pennsylvania's due process clause provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, §1. To succeed on a procedural due process claim, the aggrieved party must establish that the government has

---

[15] For example, the Pennsylvania Constitution guarantees a fundamental liberty interest to one's reputation. *See D.C. v. Department of Human Services*, 150 A.3d 558, 566 (Pa. Cmwlth. 2016) (citing Pa. Const. art. I, §§1,11)).

15

deprived them of a protected property interest or liberty interest. *Save Our Saltsburg Schools v. River Valley School District*, 285 A.3d 692, 697-98 (Pa. Cmwlth. 2022) (citing *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007)). If a liberty interest is identified, then procedural due process protections must attach, meaning: "adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Lawson v. Department of Public Welfare*, 744 A.2d 804, 806-07 (Pa. Cmwlth. 2000).

Article I, section 5 of the Pennsylvania Constitution, Pa. Const. art. I, §5, also known as the free and equal elections clause, protects the right to vote as a fundamental right. *See Banfield v. Cortes*, 110 A.3d 155, 176 (Pa. 2015). In fact, this right "is pervasive of other basic civil and political rights[.]" *Bergdoll v. Kane*, 731 A.2d 1261, 1269 (Pa. 1999).[16]

Presently, the General Assembly has directed that electors aggrieved by a county board of elections may seek redress for an injury done to them in the process of exercising the fundamental right to vote. Thus, we conclude that electors possess a liberty interest to contest the disqualification, as to hold otherwise would render Section 1407 perfunctory in contravention of the above discussed provisions of the Pennsylvania Constitution. Indeed, here, none of the Electors were aware that their

---

[16] *See also* article I, section 11 of the Pennsylvania Constitution, Pa. Const. art. I, §11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."); Section 1407(a) of the Election Code, 25 P.S. §3157(a) ("Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election . . . may appeal to the court . . . specified in this subsection . . . ."); Section 1407(b) of the Election Code, 25 P.S. §3157(b) ("The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates . . . .").

16

ballots had not been counted until after election day. *See* Joint Stipulation of Facts ¶¶9-15. In fact, at least two of the Electors were unaware that their ballots had not been counted *for months* after the Primary. *Id.* ¶¶11, 15. We do not believe our Constitution countenances such a deprivation without notice and an opportunity to be heard; thus, we conclude the Policy contravenes due process.[17]

Finally, Appellants assert that the trial court erred by requiring too burdensome of a notification procedure. Appellants' Brief at 31-32. If anything, Appellants argue that the trial court should have ordered an alternative procedure to afford notice under the *Mathews* test, *e.g.*, publishing a list of voters whose mail-in or absentee ballots were not counted. Appellants' Brief at 31. We reject this view, especially because, per the Joint Stipulation of Facts, the County Board afforded notice to electors whose ballots were segregated for the 2023 elections. Joint Stipulation of Facts ¶¶26-27.

To conclude, the current Policy emasculates the Election Code's guarantees by depriving voters - like Electors herein - the opportunity to contest their disqualification or to avail themselves of the statutory failsafe of casting a provisional ballot. Thus, the trial court's award of permanent injunctive relief is proper, because: (1) Appellees possess a clear right to relief; (2) the harm electors will continue to suffer under the Policy cannot be compensated by damages; and (3) continuing to deny electors procedural due process will cause far greater injury than granting the requested injunctive relief (which the County Board is easily capable of doing). We similarly agree with the trial court in all other respects.

---

[17] Additionally, we are not persuaded by Appellants' distinction between segregation and canvassing. Although the trial court's remedy was aimed at the conduct which would best apprise Electors that their ballots were not counted, *i.e.*, the initial segregation, it was for the purpose of ensuring the Electors' liberty interest in challenging the County Board's canvassing decision.

17

Accordingly, the trial court's order is AFFIRMED.[18]

_____
MICHAEL H. WOJCIK, Judge

Judge Dumas dissents and wishes to merely be so noted.

---

[18] On September 10, 2024, Appellants filed an Application for Relief seeking to file a corrected brief after discovering technical errors in their otherwise timely filed brief. The Application for Relief is GRANTED. On September 11, 2024, after timely filing their briefs, Appellees filed an Application for Relief seeking to file corrected copies of their brief in this Court. The Application for Relief is GRANTED.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Center for Coalfield Justice,             :
Washington Branch NAACP,                  :
Bruce Jacobs, Jeffrey Marks,              :
June Devaughn Hython,                     :
Erika Worobec, Sandra Macioce,            :
Kenneth Elliott, and David Dean           :
                                          :
              v.                          :  No. 1172 C.D. 2024
                                          :
Washington County Board of                :
Elections, Republican National            :
Committee and Republican Party            :
of Pennsylvania,                          :
                                          :
                Appellants                :


O R D E R


AND NOW, this 24<u>th</u> day of <u>September</u>, 2024, the August 23, 2024 Order of the Court of Common Pleas of Washington County is **AFFIRMED**. The parties' respective Applications for Relief to file corrected briefing in this matter is GRANTED.


_____
MICHAEL H. WOJCIK, Judge